**In re Billy G. HILL, Debtor.**

**Bankruptcy No. 7–93–13100 MR.**

United States Bankruptcy Court,
D. New Mexico.

April 25, 1996.

James E. Burke, Albuquerque, NM.

James L. Nye, Albuquerque, NM.

R. Matthew Bristol, Roswell, NM.

## MEMORANDUM OPINION

MARK B. McFEELEY, Bankruptcy Judge.

THIS MATTER came before the Court upon the motion of the trustee to employ special counsel to pursue a claim against the debtor for fraudulent transfer. The debtor objects to the motion on the grounds that the claim has been abandoned by the trustee. The Court having considered the briefs sub-mitted by counsel, examined the petition, schedules and statements of the debtor, re-viewed the pleadings, and being otherwise fully advised FINDS the motion should be denied.

## FACTS

At the time debtor filed his voluntary chapter 7 bankruptcy petition on October 19, 1993, there was pending in the Fifth Judicial District of the State of New Mexico, Chaves County, a fraudulent transfer action against debtor in which Octavio Perez was the plain-tiff. This lawsuit was listed by debtor in his statement of financial affairs but not in his schedule of assets and liabilities. Matthew Bristol, attorney for Octavio Perez, attended the § 341 meeting on December 15, 1993, where he answered questions put to him by the trustee about the fraudulent transfer ac-tion. The trustee asked Mr. Bristol to send him copies of the pleadings. In his report from the § 341 meeting, the trustee deferred the determination of whether or not there were assets in the estate from which a divi-dend to creditors could be paid until Febru-ary 1, 1994, stating that "[d]uring that time frame, I will investigate assets." The debtor received a discharge on March 30, 1994, and on April 7, 1994, the trustee filed a report of no distribution and notice of abandonment of assets in which he abandoned "any and all assets listed on the statements and schedules filed in this case which have not been other-wise administered." The case was closed on April 22, 1994.

Subsequent to the closing of the case, the trustee became aware that the law firm of Bristol & Gomez was willing, on behalf of the estate, to pursue the fraudulent transfer claim against the debtor. Bristol & Gomez offered to pursue the claim on a contingency basis. The trustee re-opened the bankruptcy case and moved the Court for approval of the employment of Bristol & Gomez as special counsel. The debtor objected and has as-serted the trustee's abandonment of the cause of action for fraudulent transfer as a basis for his objection. To the best of the Court's knowledge, the action in Chaves county is still pending.

## DISCUSSION

■ The language of § 554(c) provides that property "scheduled under section 521(1)" will be abandoned to the debtor if not administered by the trustee at the time of the closing of the case. One of the issues before the Court is a determination whether "scheduled in § 521" refers to

(A) all the formal disclosures required in § 521(1): list of creditors, schedule of assets and liabilities, schedule of current income and current expenditures, statement of debtor's financial affairs; or

(B) only to the disclosures made in "schedules;" or

(C) only to the disclosures made in the "schedule of assets and liabilities."

A number of decisions interpret very literally the requirement in § 554(c) that a deemed abandonment occurs only with respect to property "scheduled" under § 521. Those cases hold that "scheduled" means listed on a piece of paper entitled "schedule," as opposed to listed in the attachments a debtor formally files along with the bankruptcy petition. *See Mele v. First Colony Life Ins. (In re Mele)*, 127 B.R. 82 (U.S.Dist. Ct.D.C.1991); *In re Schmid*, 54 B.R. 78 (Bankr.D.Or.1985); *In re Bryson*, 53 B.R. 3 (Bankr.M.D.Tenn.1985).

These decisions rest upon the single word "schedule" with the following result: If a debtor makes an error in filling out his bankruptcy schedules and statements by reporting a potential asset in the schedule of current income and expenditures (or possibly even his "schedule" of executory contracts and unexpired leases), rather than the schedule of assets and liabilities, the asset could later be deemed abandoned to the debtor by operation of § 554(c) if not administered by the trustee. If, on the other hand, a debtor makes an error in filling out his bankruptcy statements and schedules and reports a potential asset in the statement of financial affairs (a category into which an asset such as a pending state court claim probably fits more logically than into current income and expenditures), the asset would *not* later be deemed abandoned by operation of § 554(c). This disparity in outcome rests on no sub-

stantive policy or reasoning but on the mere happenstance that the erroneous entry was or was not made on a pleading entitled "schedule."

Other cases narrow the requirement further and hold that "scheduled" refers to the schedule of assets and liabilities only. *See Swindle v. Fossey (In re Fossey)*, 119 B.R. 268 (D.Utah, C.D.1990); *In re McCoy*, 139 B.R. 430 (Bankr.S.D.Ohio 1991); *In re Winburn*, 167 B.R. 673 (Bankr.N.D.Fla.1993); *In re Medley*, 29 B.R. 84, 86 (Bankr.M.D.Tenn. 1983). Presumably those courts would not deem a claim erroneously listed in a debtor's schedule of current income and expenditures abandoned under § 544(c), even though appearing under the requisite heading of "schedule." These cases, at least, are logically consistent in requiring a potential asset of the estate to be properly listed under assets. They fail, however, to provide any convincing basis for making such a limitation.

■ The operation of § 554(c) is grounded upon a presumption of intentional abandonment by the trustee. The presumption arises from an expectation that the trustee will certainly have knowledge of the existence of any asset that has been fully and formally disclosed by the debtor in his filings. An error in the categorization of the asset presents a question of burden. Is it more appropriate to require a debtor to understand the technical distinctions among the various schedules and statements of a bankruptcy filing? Or should the bankruptcy trustee carry the burden of discerning a potential asset even when the asset is fully disclosed under the wrong heading?

Although debtors are predominantly represented by counsel who should possess the education and experience necessary for an accurate categorization of the information provided in bankruptcy filings, this is not always the case. Pro se debtors are faced with the task of filling out their own petition and attachments. All trustees, in contrast, are presumably selected for the trustee panel on the basis of their relative expertise and experience in the area of bankruptcy. It seems more reasonable and equitable to place a burden on the trustee to examine and evaluate all the readily available information

filed with a petition, regardless of its categorization, rather than to expect a debtor, who may be pro se, to understand reporting distinctions which are frequently blurred.

The language of § 521 itself supports a broader reading of "scheduled" in § 554(c), because the paragraph which follows paragraph § 521(1) makes a particular reference to "debtor's schedule of assets and liabilities." The use of this specific reference strongly suggests that the drafters of the Code will say "schedule of assets and liabilities" when that narrow requirement is intended, and that a reference to § 521(1) is a reference to § 521(1) as a whole.

In the entire line of cases which require an asset to have been scheduled, literally, in the schedule of assets and liabilities (or in some cases, any "schedule"), the underlying concern is for the trustee's ability efficiently to identify and investigate a potential asset of the estate. In *In re Sylvia*, 190 B.R. 495 (Bankr.D.Conn.1995), the court rested its decision on "whether information concerning a potential asset of chapter 7 debtors had been properly disclosed to the trustee so that the trustee could make an informed decision concerning abandonment." *Sylvia* at 496. *In re McCoy*, 139 B.R. 430 (Bankr.S.E.Ohio 1991) also contains a description of the policy behind the scheduling requirement of § 544(c):

> The scheduling requirement of § 544(c) furthers the policy of giving a trustee in bankruptcy means to administer the estate as quickly as possible. A readily available listing of assets prevents the trustee from having to do a rigorous search of the debtor's records and make inferences from answers to questions. *McCoy* at 432.

And in *Mele v. First Colony Life Ins. (In re Mele)*, 127 B.R. 82 (U.S.Dist.Ct.D.C.1991), the court found that an implied abandonment through § 554(c) requires an intelligent decision by the trustee which can be made only on the basis of "all reasonably available information." *Mele* at 86. Any complete and coherent information supplied by the debtor under § 521(1) is both "readily" and "reasonably" available to the trustee, allowing the trustee thereby to make an "informed decision" on abandonment without reliance on outside sources.

■ According to the record before the Court, the information supplied in the debtor's statement of financial affairs made the trustee fully aware of the fraudulent transfer claim. The trustee inquired about the claim at the § 341 meeting. The attorney for the plaintiff in the fraudulent transfer action was present, answered questions, and agreed to forward copies of the pleadings to the trustee. The trustee then postponed the determination of the existence of assets pending investigation. It is incumbent upon the trustee to follow up on information supplied at the § 341 meeting and to require a debtor, if necessary, to file amended statements and schedules.

From the foregoing facts the Court finds that the trustee made an intelligent decision, based on reasonably available information, to abandon the claim. The trustee's Withdrawal of No Asset Report and Motion to Reopen Bankruptcy and Defer Court Fee states that the debtor's "schedules and statements" listed no non-exempt property for the trustee to administer, and that "the trustee became aware of the alleged fraudulent conveyances after filing the report of no distribution." These allegations do not square with the facts.

The cases which rely on the word "schedule" to reach a result do not contain any well-reasoned examination of the competing obligations of debtor and trustee. The analyses made of the policy behind the provisions of § 554 focus on the availability of information to the trustee, but go no further. This omission can be explained because in each instance the case involves a compelling fact situation which, in equity, presses for a decision *against* allowance of an implied abandonment. In *Mele v. First Colony Life Ins. (In re Mele)*, 127 B.R. 82 (U.S.Dist.Ct.D.C. 1991), the trustee failed to conduct even a rudimentary investigation of a claim in which a three-figure settlement offer was already on the table. In *In re Schmid*, 54 B.R. 78 (Bankr.D.Or.1985), the debtor made only ambiguous disclosures in his statements and schedules and concealed information at the § 341 meeting. In *In re Harris*, 32 B.R. 125 (Bankr.S.D.Fla.1983), the debtor failed to disclose his interest in mortgages in either

schedules or statement. In *In re McCoy,* 139 B.R. 430 (Bankr.S.D.Ohio 1991), the debtor failed to list an anticipated tax return on any schedules or statement and underestimated its value upon being questioned at the § 341 meeting. In *Swindle v. Fossey (In re Fossey),* 119 B.R. 268 (D.Utah, C.D.1990), the trustee failed to keep a promise made to the debtor that the trustee would give formal notice of intent to abandon so that the debtor could object. In *In re Winburn,* 167 B.R. 673 (Bankr.N.D.Fla.1993), a 2.5 million dollar windfall to the debtor was not listed on any schedules and only added to the statement of financial affairs after almost a year. No similar fact situation is present in this case.

■ Finally, the Court finds the trustee has expressly abandoned, in his Trustee's Report of No Distribution and Notice of Abandonment of Assets, "any and all assets listed on the *statements* and schedules filed in this case that have not been otherwise administered." (emphasis added). Although the current requirements of the Code no longer include the filing of a document which itemizes all property being abandoned, or perhaps *because* the requirement is gone, a trustee must exercise care in the language of pleadings. The entire question of "scheduled" property becomes academic where, as here, the trustee's report specifically abandons all property listed in statements as well as schedules.

■ The trustee's use of the word statement distinguishes the instant case from *In re Medley,* 29 B.R. 84 (Bankr.M.D.Tenn. 1983), a decision which contains facts which are otherwise closest to those before the Court. In *Medley* the debtors had made a rather ambiguous listing of their expected income tax refund in the statement of financial affairs but not in their schedule of assets. When the trustee filed his no-asset report, he limited the effect of the abandonment by specifically stating that "any property listed in the debtor's schedules of assets will be deemed abandoned." *Medley* at 85. In the present case, the trustee's inclusion of the phrase "statements and schedules" takes the Court any remaining distance needed to reach a decision that the state court claim for fraudulent transfer has been deliberately and knowingly abandoned. It is a principle of uniform application that once an asset of the estate has been abandoned by the trustee, it is no longer part of the estate and is effectively beyond the reach and control of the trustee. *In re Sutton,* 10 B.R. 737 (Bankr.E.D.Virginia 1981); *In re Polumbo,* 271 F.Supp. 640 (W.D.Virginia 1967).

### CONCLUSION

For the foregoing reasons, the Court finds the motion to approve appointment of special counsel should be and hereby is DENIED. This opinion constitutes the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.