**In re Karen V. KAYNE, Debtor.**

**Gregory B. Orton, Appellant,**

v.

**Timothy W. Hoffman, Chapter 7 Trustee, Appellee.**

**BAP No. NC–10–1297–PaJuH.**

**Bankruptcy No. 09–12470.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and submitted on June 16, 2011.

Decided July 1, 2011.

Gregory B. Orton, East, Sonoma, CA, argued pro se.

Jean Barnier of MacConaghy & Barnier, PLC, West, Sonoma, CA, argued for appellee.

Before: PAPPAS, JURY and HOLLOWELL, Bankruptcy Judges.

PAPPAS, Bankruptcy Judge.

Gregory B. Orton ("Orton"), attorney for chapter 7 [1] debtor Karen V. Kayne ("Van Kayne") [2], appeals the order of the bankruptcy court imposing monetary sanctions of $20,000 on him pursuant to Rule 9011 and § 707(b)(4)(D). Because Orton knowingly failed to exercise due diligence as a debtor's attorney in this case, we AFFIRM.

## FACTS

On August 3, 2009, Van Kayne filed a petition for relief under chapter 7, along with the required Schedules and Statement of Financial Affairs ("SOFA"). The petition was "electronically" signed by Orton as her attorney: "/s/ Gregory B. Orton." Directly below Orton's signature, the following certification appears: "In a case in which § 707(b)(4)(D) applies, this signature also constitutes a certification that the attorney has no knowledge after an inquiry that the information in the schedules is incorrect."

Paragraph 4 of Van Kayne's SOFA discloses that, at the time of her bankruptcy filing, she was a party to a lawsuit, *Van Kayne v. Santa Rosa Executive Ctr.*, pending in the Sonoma County Superior Court. The nature of that proceeding is described as an "Action on promissory note" (the "Note"). There is no other information about this action in the SOFA. In addition, no potential recovery from the action was listed in Debtor's schedule B, and no payments from the Note were listed in Debtor's income on schedule I.

Van Kayne and Orton attended the § 341 meeting of creditors on September 3, 2009, at which Timothy W. Hoffman, the chapter 7 trustee ("Trustee"), questioned Van Kayne about the lawsuit and Note. Regarding the Note, Trustee asked Van Kayne, "Is that listed in your Schedule of Assets?" § 341 Hr'g Tr. 7:24–25 (Sept. 3, 2009). Before Van Kayne could reply, Orton interjected, "No, I don't think it is, because I was under the impression that it is essentially uncollectible." *Id.* at 8:1–3. Trustee continued his questioning of Van Kayne:

TRUSTEE: When was the last time you received a payment on the Note?

VAN KAYNE: He did make a payment last month.

---

1. Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037. The Federal Rules of Civil Procedure are referred to as "Civil Rules."

2. Debtor's bankruptcy petition and the bankruptcy docket indicate that her name is "Karen V. Kayne." Appellant's notice of appeal, the state court lawsuit and many statements in the transcripts refer to debtor's last name as "Van Kayne." For ease of reference, the Panel uses "Van Kayne" in this decision.

TRUSTEE: And you say you're getting a thousand what a month?

VAN KAYNE: 1,225 a month.

TRUSTEE: And, according to your calculations, if he pays you regularly through December, it'll all be satisfied in full?

VAN KAYNE: Yes, he's—he's a little bit behind, but I think he will catch up.

TRUSTEE: Well, how much is he going to have to pay [in December] to pay this thing off? . . .

VAN KAYNE: I think it's about 7,000.

TRUSTEE: I'll leave it to you whether you want to amend the Schedules, but it sounds like an asset to me.

*Id.* at 9:3–23.

Orton told Trustee that he was surprised that payments were being made on the Note. *Id.* at 10:2. Trustee then observed that the $7,000 balance supposedly due on the Note would likely be exempt under the California wildcard exemption if claimed and left it to Orton and Van Kayne's discretion whether to amend the schedules to list and exempt the payments on the Note. *Id.* at 10:9–12.

Van Kayne and Orton never amended any of the schedules. Trustee filed a report on September 9, 2009, stating that the bankruptcy case had no assets to administer. Van Kayne was granted a discharge, and the bankruptcy case was closed, on December 7, 2009.

A month later, Trustee was contacted by an attorney for the maker of the Note, informing him that the true payoff of the Note due in December was $61,250. Acting on this information, the United States Trustee moved to reopen the case, supporting the motion with the declaration of Trustee that Van Kayne had misrepresented the payoff value on the Note as $7,000 at the meeting of creditors, and had failed to list payments on the Note in the SOFA

and in the calculation of the means test. The bankruptcy court granted the motion and reopened the case on February 9, 2010. Trustee was reappointed.

Trustee then filed a motion to compel Van Kayne to turn over the Note and payments received on the Note postpetition. The motion was served on both Van Kayne and Orton. No opposition to Trustee's motion was filed by Van Kayne. The bankruptcy court conducted a hearing on the motion on February 26, 2010, where Trustee was represented by counsel, but neither Van Kayne nor Orton appeared. The bankruptcy court granted Trustee's motion and entered its order compelling turnover of property of the estate on March 8, 2010. The order directed Van Kayne to turn over to Trustee the Note and $6,250 in payments she had received on the Note postpetition.

Meanwhile, Trustee conducted a Rule 2004 examination of Van Kayne on March 3, 2010. Orton was present for the first part of the examination. While Orton was present, and under questioning by Trustee's attorney, Van Kayne admitted that she had received at least $1,250 per month in payments on the Note for the six months preceding her filing of bankruptcy, that she continued to receive payments postpetition which were current, that the payments were not listed in her schedules, and that the Note was not listed on her schedule B. Additionally, Van Kayne testified, while Orton was still in the room, that she had given a binder of all the documents relating to her bankruptcy filing to Orton before the petition was filed, which included a copy of a settlement agreement between her and the maker of the Note detailing the terms of the Note and listing the payments that had been made on the Note. Orton did not challenge these assertions. Remarkably, immediately following this testimony, and though it had not con-

cluded, Orton left the Rule 2004 examination because he had another appointment.

Following Orton's departure, Trustee's lawyer continued the examination of Van Kayne about the Note and payments:

BARNIER [Trustee's counsel]: Did you verbally tell Mr. Orton that you were receiving cash payments on this promissory note?

VAN KAYNE: They were not cash. They were by check.

BARNIER: By check. Did you tell him you were receiving payments?

VAN KAYNE: Yes.

BARNIER: Do you remember when you told him that?

VAN KAYNE: When I asked him to collect the money from [the Note maker].

BARNIER: And that was prior to the filing of the bankruptcy?

VAN KAYNE: Yes.

Van Kayne Dep. 29:9–20 (March 3, 2010).

As it turns out, the Note and payments under the Note were apparently the subject of a settlement agreement that had been negotiated between Van Kayne and the Note maker as part of the state court proceedings. At the Rule 2004 examination, Van Kayne was asked if she had provided a copy of the settlement agreement to Orton before the petition was filed. She replied, "yes." *Id.* at 39:21. She also testified that Orton had looked at the settlement agreement in her presence. *Id.* at 39:23. Van Kayne testified that she and Orton discussed the need to disclose the Note and agreement in the bankruptcy schedules:

VAN KAYNE: We had a lengthy discussion about the confidentiality of this agreement. And [Orton] said that disclosing the court case on the bankruptcy filing would suffice, and that it is the due diligence of the bankruptcy trustee to investigate the matter, to pull the file and to find out the specifics of the confidential agreement.

Id. at 37:17–23.

On April 4, 2010, Trustee filed an adversary complaint against Van Kayne to revoke her bankruptcy discharge under § 727(d). No response to the complaint was filed, and the Clerk entered a default against Van Kayne on May 18, 2010. Trustee moved for default judgment on May 26, 2010, which was also unopposed. The bankruptcy court entered a default judgment on May 27, 2010, revoking Van Kayne's discharge.

In addition, on April 7, 2010, Trustee filed a motion for sanctions against Orton under § 707(b)(4)(C) and (D), Rule 9011, and N.D. Cal. Local R. 11–6.[3] In this motion, Trustee alleged that Van Kayne and Orton had conspired to defraud Trustee and Van Kayne's creditors. Specifically, Trustee alleged that, in preparing the bankruptcy petition and schedules, Orton was aware that the payoff of the Note was $61,250, and that it was not scheduled or adequately disclosed. Trustee argued that Orton was also aware of $42,500 in payments Van Kayne had received on the Note in 2009, and that these were not disclosed in the bankruptcy schedules. Trustee also alleged that one week after the bankruptcy case was closed, Van Kayne filed an action against the Note maker in state court to enforce the settlement agreement and recover $61,250, and that, although Van Kayne appeared *pro se*

---

**3.** N.D. Cal Local R. 11–6 authorizes the judge to refer matters of unprofessional conduct to disciplinary authorities, including the state bar. Although the bankruptcy judge did order that Orton be reported to the State Bar of California, that order is not before us in this appeal.

in the state court, the motion papers had been prepared by Orton.

The bankruptcy court held its first hearing on the sanctions motion on May 7, 2010. The court cautioned Orton that the allegations against him could potentially result in criminal charges and suggested that he retain counsel. The court ordered that the hearing be continued, and that Orton file a response to the sanctions motion within ten days.

Orton responded to the sanctions motion, albeit not until June 1, 2010. In his response, Orton argued that he had listed the lawsuit in the SOFA, and thus there was no conspiracy to conceal this asset from Trustee. Orton also argued that, since the lawsuit was listed in the SOFA, it had been abandoned by Trustee when the case was closed under § 554(c).

Trustee replied, detailing the elements of § 707(b)(4)(C) and (D) and Rule 9011 to demonstrate how Orton's behavior fell within the scope of those provisions.

On June 23, 2010, Orton responded to Trustee's submissions and declarations. In the response, Orton refers to himself in the third person, and notes that:

> Orton has filed a large volume of Chapter 7 petitions in the last five years and expects to achieve a certain "comfort level" with the facts and circumstances of the particular case, and the credibility of the debtor and/or other resource providing the information he uses to draft the petition. Orton would prefer to say that he had achieved that level of comfort with the Karen Van Kayne case before he filed the petition, but he cannot make that claim. There were inconsistencies in the debtor's statements to Orton, and it was more difficult to get certain information regarding debtor's income than circumstances would warrant. Debtor's employment history was "sketchy" and her statements regarding

> a pending lawsuit in Sonoma Superior Court left enough gaps that Orton was compelled to review the court file.

Orton Response at 2.

> Van Kayne eventually provided what Orton incorrectly determined to be adequate information for him to file the petition.

*Id.*

> Orton should have declined to file Karen Van Kayne's case.... Orton was intimidated by Van Kayne's strong presence and demanding posture.

*Id.* at 3.

> Attorney Orton did investigate the facts before filing [Van] Kayne's Chapter 7 petition. Orton asked many questions, but should not have been satisfied with the paucity of answers he received.

*Id.*

> Orton concedes that he should not have filed this case, and, that when be believed he had been lied to by his client he should have diligently sought to amend the petition with facts, either obtained from a subsequent investigation, or from debtor, or withdrawn from representation.

*Id.* at 3–4.

The bankruptcy court conducted its second hearing on the sanctions motion on June 11, 2010. Trustee was represented by counsel and Orton appeared *pro se.* After hearing from both parties, the court indicated that it was inclined to award sanctions, but requested documentation of expenses from Trustee. The court allowed Orton time to respond to Trustee's requests before the next hearing.

The bankruptcy court held the final hearing on the Trustee's motion for sanctions on June 25, 2010. Trustee was represented by counsel and Orton appeared *pro se.* At the hearing, the bankruptcy

court expressed its dismay about whether it should treat the matter as a "criminal conspiracy or merely really bad lawyering." Tr. Hr'g 2:11–12 (June 25, 2010). Orton repeated the statements from his submissions: "This is a case I shouldn't have filed. And I probably should have gotten out of it when I found that the information I thought was accurate wasn't accurate. And I didn't. So I blew it on two counts." Tr. Hr'g 2:15–19. The court then commented: "But the worst thing you did was right after the case was closed, you drafted the pleadings that the debtor used in state court to try to get the money. That's where things look really bad for you." Tr. Hr'g 3:9–12. Orton replied, "I guess I should not have drafted the motion." Tr. Hr'g 4:8–9. Orton again offered as justification that he believed Trustee had abandoned the asset when the bankruptcy case was closed, and that he thought he could draft the motion to be filed by Van Kayne in state court and not report the asset to Trustee.

After taking the issues under submission, the bankruptcy court entered a detailed Memorandum on Motion for Sanctions on July 12, 2010 ("Memorandum"). In it, the court observed that, "if everything [Trustee] has alleged is true, Orton's conduct was criminal." Memorandum at 2. However, the court indicated that its only concern in the decision was whether Orton's conduct justified civil sanctions. The court ruled:

> There is no question that Orton violated Rule 9011(b) of the Federal Rules of Bankruptcy Procedure and § 707(b)(4)(D) of the Bankruptcy Code, .... Orton knew of the existence of the Note because [Van] Kayne had told him about it and he had reviewed the state court file. He knew that the schedules, which he prepared, represented that [Van] Kayne had no liquidated debts owing her, no contingent or

unliquidated claims against anyone, and no negotiable or non-negotiable instruments.... These statements were patently false, and Orton knew it. The identification of the underlying state court lawsuit in the statement of affairs in no way excuses the lies in the schedules.

*Id.* at 2–3. The bankruptcy court rejected Orton's argument that the Note had been abandoned by Trustee, citing the case law explaining that § 554(c) requires that property be properly scheduled to be abandoned upon case closing and finding that, in this case, the Note and payments had not been scheduled.

Deciding that monetary sanctions were appropriate, the bankruptcy court noted that it had evidence from Trustee's counsel showing $16,500 in attorney fees and $592.75 in expenses had been incurred by Trustee related to reopening the case and the sanctions motion. Trustee also submitted his time records requesting $3,850 in fees relating to the sanctions motion. The court ruled that, had Orton properly scheduled the Note and payments, none of these expenses would have been necessary. Considering all these factors, and "the egregious nature of the conduct to which Orton admits," the bankruptcy court determined that a $20,000 sanction was appropriate "both to make the [bankruptcy] estate whole and to deter future misconduct." *Id.* at 3–4.

On July 19, 2010, the bankruptcy court entered its Order for Sanctions Against Debtor's Counsel, ordering Orton to pay $20,000 to Trustee. Orton filed a timely appeal.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A),

(D) and (O). The Panel has jurisdiction under 28 U.S.C. § 158.

## ISSUES

1. Whether the bankruptcy court abused its discretion in finding that Orton violated § 707(b)(4)(D) and Rule 9011, and imposing monetary sanctions against him.

2. Whether the bankruptcy court abused its discretion in determining that $20,000.00 was an appropriate sanction.

## STANDARDS OF REVIEW

■ We review all aspects of an award of sanctions for an abuse of discretion. *Price v. Lehtinen (In re Lehtinen)*, 332 B.R. 404, 411 (9th Cir. BAP 2005), *aff'd* 564 F.3d 1052 (9th Cir.2009); In *re Nguyen*, 447 B.R. 268, 276 (9th Cir. BAP 2011) (en banc).

■ In applying an abuse of discretion test, we first "determine *de novo* whether the [bankruptcy] court identified the correct legal rule to apply to the relief requested." *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir.2009). If the bankruptcy court identified the correct legal rule, we then determine whether its "application of the correct legal standard [to the facts] was (1) illogical, (2)implausible, or (3) without support in inferences that may be drawn from the facts in the record." *Id.* (internal quotation marks omitted). If the bankruptcy court did not identify the correct legal rule, or its application of the correct legal standard to the facts was illogical, implausible, or without support in inferences that may be drawn from the facts in the record, then the bankruptcy court has abused its discretion. *Id.*

## DISCUSSION

### I.

*The bankruptcy court did not abuse its discretion in determining that Orton violated Rule 9011(b) and § 707(b)(4)(D).*

The bankruptcy court found that Orton, violated Rule 9011(b) of the Federal Rules of Bankruptcy Procedure and § 707(b)(4)(D) of the Bankruptcy Code, .... He knew that the schedules, which he prepared, represented that [Van] Kayne had no liquidated debts owing to her, no contingent or unliquidated claims against anyone, and no negotiable or non-negotiable instruments .... These statements were patently false, and Orton knew it.

Memorandum at 2–3. These fact findings are well-supported in the record, and the bankruptcy court did not abuse its discretion in concluding that Orton had violated Rule 9011(b) and § 707(b)(4)(D).

Rule 9011(b) and (c) provide, in relevant part,

**Rule 9011. Signing of Papers; Representations to the Court; Sanctions; Verification and Copies of Papers**

(b) Representations to the court. By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, ...

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery ....

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

(c) Sanctions. If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.

■ Rule 9011 is the bankruptcy counterpart of Civil Rule 11. Civil Rule 11 precedents are appropriately considered in interpreting Rule 9011. *Marsch v. Marsch (In re Marsch),* 36 F.3d 825, 829 (9th Cir.1994).

■ In this case, the bankruptcy court found that Van Kayne's schedules and SOFA, prepared by Orton, contained "patently false" –13–statements, and that Orton knew that they were incorrect when he prepared them. Historically, there has been some question whether bankruptcy schedules and SOFAs fell within the scope of Rule 9011 sanctions because Rule 9011(a) seemingly excludes the schedules and SOFA. *See In re Trudell,* 424 B.R. 786, 791 (Bankr.W.D.Mich.2010); 10 COLLIER ON BANKRUPTCY ¶ 707.05[2] (Alan N. Resnick & Henry J. Sommer, 16th ed., 2010); *cf. Caldwell v. Unified Capital Corp. (In re Rainbow Magazine, Inc.),* 77 F.3d 278, 283 (9th Cir.1996) (concealing

assets in SOFA is a false statement sanctionable under Rule 9011). This question, however, appears to have been definitively settled by Congress' enactment of the comprehensive amendments to the Code in 2005, commonly known as BAPCPA. As our sister panel discussed in *Lafayette v. Collins (In re Withrow),* 405 B.R. 505 (1st Cir. BAP 2009), under BAPCPA,

> a debtor's attorney has a duty, equivalent to that under [Fed. R. Bankr.P.] 9011, to perform a reasonable investigation into the circumstances giving rise to the documents before filing them in a Chapter 7 case. For example, under new § 707(b)(4)(C) [4] attorneys are subject to an automatic certification of meritoriousness, based upon a reasonable investigation, as to any "petition, pleading, or written motion" signed by them. Furthermore, under new § 707(b)(4)(D), [5] an attorney's signature on a client's bankruptcy petition is deemed a representation that "the attorney has no knowledge after an inquiry that the information in the schedules filed with such petition is incorrect."

*Id.* at 511–12 (footnotes and citations omitted). Moreover, BAPCPA contained a "Sense of Congress" provision instructing that § 707(b)(4)(C) and (D) be read together, with Rule 9011, and that subsection (C)'s requirement of a reasonable investigation also applies to subsection (D)'s verification of information in the schedules.[6]

---

4. (C) The signature of an attorney on a petition, pleading, or written motion shall constitute a certification that the attorney has—
   (i) performed a reasonable investigation into the circumstances that gave rise to the petition, pleading, or written motion; and
   (ii) determined that the petition, pleading, or written motion—
      (I) is well grounded in fact; and
      (II) is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law

and does not constitute an abuse under paragraph (1).

5. (D) The signature of an attorney on the petition shall constitute a certification that the attorney has no knowledge after an inquiry that the information in the schedules filed with such petition is incorrect.

6. This statement provides that:
   It is the sense of Congress that rule 9011 of the Federal Rules of Bankruptcy Procedure

Given the requirements of the Rule and Code, we are therefore confident in concluding that a debtor's attorney, who fails to conduct any sort of reasonable investigation into facts underlying schedules and SOFAs, may be sanctioned under Rule 9011 and § 707(b)(4)(D). *See In re Withrow*, 405 B.R. at 512.

■■■ The Ninth Circuit has held that the standard to determine the reasonableness of an attorney's inquiry as to facts contained in signed documents submitted to a court is an objective one. In considering sanctions under Rule 9011, the trial court must measure the attorney's conduct "objectively against a reasonableness standard, which consists of a competent attorney admitted to practice before the involved court." *Smyth v. City of Oakland (In re Brooks-Hamilton)*, 329 B.R. 270, 283 (9th Cir. BAP 2005) (quoting *In re Grantham Bros.*, 922 F.2d 1438, 1441 (9th Cir.1991)), *aff'd in part and rev'd in part on other grounds*, 271 Fed.Appx. 654, 656 (9th Cir.2008).

■■■ In applying these standards to this case, the bankruptcy court began its third hearing on the sanctions motion with the observation that it was having difficulty determining if Orton's conduct was criminal or just "bad lawyering." In its Memorandum, the court noted that it was not making a determination of the criminal issues and referred those questions to the U.S. Attorney and the California State Bar. However, the bankruptcy court did make a finding that Orton's conduct was not what it expected of a competent attorney admitted to practice before the court. After hearing Trustee's comments that Orton's arguments were meritless, and that he had conducted himself in inappropriate ways, the bankruptcy court agreed: "I certainly agree with [Trustee's counsel] completely as to the proper role of a debtor's counsel. And it does not appear to me that you [Orton] came close to acting properly." Tr. Hr'g 8:18–20 (June 25, 2010). We agree with the bankruptcy court.[7]

During the course of these proceedings, Orton has admitted that he did not conduct a reasonable inquiry into the facts surrounding the Note and payments. In his response to Trustee's motion filed June 23, 2010, Orton stated that, "Attorney Orton did investigate the facts before filing Van Kayne's Chapter 7 petition. Orton asked many questions, but should not have been satisfied with the paucity of answers he received." Orton Response June 23, 2010 at 3. The record shows that, after two months of almost daily visits from Van Kayne, Orton finally agreed to file the

---

(11 U.S.C.App.) should be modified to include a requirement that all documents (including schedules), signed and unsigned, submitted to the court or to a trustee by debtors who represent themselves and debtors who are represented by attorneys be submitted only after the debtors or the debtors' attorneys have made reasonable inquiry to verify that the information contained in such documents is—

  (1) well grounded in fact; and

  (2) warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law.

Pub.L. 109–8 § 319 (2005) (reprinted in E–2 COLLIER ON BANKRUPTCY App. Pt. Sec. 319 (2005)).

7. One example of inappropriate behavior occurred at the Rule 2004 examination. After his client admitted to receiving payments on the Note which were not disclosed in her schedules, Orton left the examination "for another appointment." As the bankruptcy court observed, he was not present to protect his client from invasion of the attorney-client privilege. Although Orton's dereliction allowed facts to emerge which might otherwise have remained hidden, we must agree with the bankruptcy court that it has to rely on competent counsel performing in appropriate ways, and that Orton never came "close to acting properly."

bankruptcy petition and schedules, even though Van Kayne "provided what Orton incorrectly determined to be adequate information for him to file the petition." *Id.* at 2. By his own admission, what little inquiry Orton undertook in this case resulted in a paucity of answers and inadequate information for him to file the petition, schedules and SOFA.

By his own admissions, Orton confesses to a failure to conduct a reasonable investigation into the facts presented in the schedules and thus concedes that he violated Rule 9011(b) and § 707(b)(4)(D). Our inquiry could, therefore, stop here and we could confidently conclude that the bankruptcy court did not err in ruling that Orton "violated Rule 9011(b) of the Federal Rules of Bankruptcy Procedure and § 707(b)(4)(D) of the Bankruptcy Code." Memorandum at 2.

But the bankruptcy court went beyond the basic finding and ruled that Orton's conduct was "egregious." *Id.* at 3. Orton not only did not conduct a reasonable inquiry into whether the schedules were well grounded in fact, but he had "knowledge . . . that the information in the schedules filed with such petition [was] incorrect." § 707(b)(4)(D). The bankruptcy court had evidence from Van Kayne's Rule 2004 examination from which it could find that Van Kayne had given Orton a copy of the settlement agreement which provided that the December payoff on the Note was approximately $61,250, and other documents showing that she had received payments on the Note each month during the year before filing the petition. Van Kayne testified that Orton read that material in her presence. Orton has not seriously challenged those assertions, and furthermore, admits that he also examined the records of the state court action before the bankruptcy case was filed, one of which was a minute entry by the superior court

judge noting that monthly payments on the Note were being received by Van Kayne.

Thus, on this record, the bankruptcy court could properly conclude that Orton violated both Rule 9011(b) and § 707(b)(4)(D) in an egregious manner. Besides conducting a self-admittedly inadequate inquiry into the facts, by drafting and filing schedules for Van Kayne that omitted the value of the Note as an asset, or any information about the payments she was receiving as income, Orton helped render those schedules false. The bankruptcy court found that Orton was aware of this critical information, but failed to include it in the bankruptcy filings, a finding that is not clearly erroneous. Because Orton knew that these incomplete pleadings were not well-grounded in fact, he violated his duties under the Rules and Code.

In the bankruptcy court and this appeal, Orton has claimed that his listing of the state court lawsuit in Van Kayne's SOFA was sufficient information for Trustee to perform his duties, thereby excusing his duty to otherwise list the Note or payments in Van Kayne's bankruptcy filings. Orton relies on *In re Atkinson,* 62 B.R. 678 (Bankr.D.Nev.1986). According to Orton, in *Atkinson,* the bankruptcy court determined that simply listing the lawsuit, the court where the legal action was pending, and the value of the suit as unknown, was sufficient information. *Id.* at 679–80. Orton points out that this was precisely the sort of information he provided in Van Kayne's SOFA about the Note and state action.

Orton overlooks several important distinctions between the facts in *Atkinson* and the circumstances in this appeal. First, the debtor in *Atkinson* listed the lawsuit as an asset on schedule B with the notation "unknown value." *Id.* at 679. In contrast, Orton did not list the lawsuit on

Van Kayne's schedule B, and made no reference to its possible value. In this appeal, there was evidence that Orton knew the payoff value of the Note was $61,250 at the time he filed the petition and schedules.

Finally, and perhaps most importantly, the *Atkinson* court ruled that the bare bones listing of the lawsuit "was sufficient to enable the trustee (and any interested creditors) to examine the debtor at the § 341 meeting regarding the litigation. The trustee did in fact question the debtor about the case, and there is no evidence that the debtor was less than candid." *Id.* at 679–80. In this appeal, while the bare bones information in Van Kayne's SOFA prompted Trustee to inquire about the lawsuit, it was the first time he became aware of the existence of a balance due on the Note and payments. But unlike the debtor in *Atkinson,* and in Orton's presence at the § 341 meeting, Van Kayne seemingly lied to Trustee about the facts. The false information provided by Van Kayne that the December payoff value of the Note was $7,000, rather than its true value of $61,250, prompted Trustee to conclude that the Note was an asset but likely of no value to the estate because a purported value of $7,000 for the Note could be exempted.

In our view, *Atkinson* should be read for the proposition that a bare bones listing of a lawsuit, accompanied by examination of a credible debtor regarding that lawsuit, and the absence of evidence to suggest that any information was deliberately concealed by the debtor, was sufficient disclosure of the facts of that lawsuit. Here, on the other hand, the bankruptcy court found that Van Kayne lied and deliberately con-

cealed the value of the Note, and Trustee, acting on that misrepresentation, chose not to pursue the Note. The bankruptcy court also found that Orton was aware of the existence of the Note and payments, but did not list those facts in Van Kayne's schedules. Given these remarkable facts, *Atkinson* does not excuse Orton's cavalier approach to adequate disclosure in this case.

■ Orton also cites *Atkinson* to support his failure to amend the bankruptcy schedules after some, but not all, of the true facts about the Note and payments emerged, and his preparation of a pleading within weeks of Van Kayne's discharge for her use in attempting to recover the $61,250 balance on the Note. Orton's argument here is that Trustee, without knowing the truth, somehow abandoned the lawsuit and the Note by operation of law pursuant to § 554(c) by allowing the bankruptcy case to be closed.[8] Thankfully, the bankruptcy system does not countenance such gamesmanship, and the bankruptcy court appropriately disposed of this near-frivolous argument:

This court does not know if Orton actually believes his meritless argument that the Note was abandoned back to [Van] Kayne by operation of law pursuant to § 554(c) of the Bankruptcy Code. In order for that section to apply, property must be properly scheduled so that the trustee can make a knowing and intelligent decision as to whether to administer it. The note at issue here was never scheduled at all.... Mentioning an asset in the statement of affairs is not the same as scheduling it. *In re Fossey,* 119 B.R. 268, 272 (D.Utah 1990); In *re Winburn,* 167 B.R. 673, 676 (Bankr.N.D.Fla.

---

8.  Section 554(c) provides:
    Unless the court orders otherwise, any property scheduled under section 521(a)(1) of this title not otherwise administered at

the time of the closing of a case is abandoned to the debtor and administered for purposes of section 350 of this title.

1993); *In re McCoy*, 139 B.R. 430, 431 (Bankr.S.D.Ohio 1991) ("The word 'scheduled' in [§ ] 554(c) has a specific meaning and refers only to assets listed in a debtor's schedule of assets and liabilities."); *In re Medley*, 29 B.R. 84, 86–87 (Bankr.M.D.Tenn.1983).

Memorandum at 3 n.2. As the bankruptcy court acknowledged, its ruling is consistent with the Panel's case law. *Pace v. Battley (In re Pace)*, 146 B.R. 562, 565 (9th Cir. BAP1992) (holding that in order for an asset to be abandoned by operation of law, the exact asset must be properly scheduled). Orton's act of listing the lawsuit in Van Kayne's SOFA did not result in the Note, and its value, being abandoned when the bankruptcy case was closed.

■ In sum, Rule 9011, now enhanced by the BAPCPA additions to the Code, evinces a policy that a debtor's attorney exercise independent diligence and care in ensuring that there is evidentiary support for the information contained in his client's bankruptcy schedules. *In re Dean*, 401 B.R. 917, 924 (Bankr.D.Idaho 2008). Fairly read, in this case, Van Kayne's schedules were rendered just plain false by failing to list the Note as an asset, and by failing to list her receipt of payments on the Note as income. As the bankruptcy court found, Orton's conduct in this case fell dismally short of the standard set by the Rules and Code. We therefore conclude that the bankruptcy court did not abuse its discretion in determining that Orton violated § 707(b)(4)(D) and Rule 9011(b).

## II.

### *The bankruptcy court did not abuse its discretion in fixing the amount of sanctions at $20,000.00.*

■ In assessing an award of sanctions, we examine whether the proceedings were fair, the evidence supports the award, and whether the award is reasonable in amount. *In re Nguyen*, 447 B.R. at 276.

■ We have no doubt that these proceedings were fair. Orton received the sanctions motion that detailed Trustee's specific arguments under Rule 9011, § 707(b)(4)(C) and (D), and N.D. Cal. Local R. 11–6 why sanctions were appropriate. Orton was given ample opportunity to respond to the motion, and Orton and Trustee exchanged several responsive pleadings concerning the motion. The bankruptcy court conducted three hearings on the sanctions motion.

At the first hearing, the court stopped the proceeding, warned Orton of the possibly serious consequences stemming from Trustee's arguments, and *sua sponte* continued the first hearing with a strong admonition to Orton to obtain counsel.

At the second hearing, after hearing from the parties, the bankruptcy court indicated its inclination to award sanctions, but continued the hearing again, so that Trustee and his attorney could submit documentation of the fees and expenses incurred in reopening the case and prosecuting the sanctions motion, providing Orton an opportunity to respond to Trustee's requested fees and expenses, as well as to allow a final review in the third hearing. The bankruptcy court considered the amount requested by Trustee as a sanction at the third hearing. In other words, Orton had a full and fair opportunity to present his positions and to challenge the amount of any sanctions requested.

The evidence also supports that the sanctions award made by the Court was reasonable. The bankruptcy court assessed monetary sanctions of $20,000 against Orton under § 707(b)(4)(B), which provides:

(B) If the court finds that the attorney for the debtor violated rule 9011 of the Federal Rules of Bankruptcy Procedure, the court, on its own initiative or on the motion of a party in interest, in accordance with such procedures, may order—

(i) the assessment of an appropriate civil penalty against the attorney for the debtor; and

(ii) the payment of such civil penalty to the trustee, the United States trustee (or the bankruptcy administrator, if any).

Although § 707(b)(4)(B)(i) authorizes the assessment of a "civil penalty," it provides no guidance on how the amount of such sanction should be fixed. Since a Rule 9011 violation is an inherent requirement for imposition of a sanction under this Code provision, we turn to Rule 9011(c)(2) and the case law for guidance. The rule states:

A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated.... [T]he sanction may ... include ... an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation.

The bankruptcy court has "wide discretion" in determining the amount of a sanctions award. *Kowalski–Schmidt v. Forsch (In re Giordano)*, 212 B.R. 617, 622 (9th Cir. BAP 1997). Although the court may award all reasonable fees and costs claimed by Trustee, it also has the discretion to set the sanction at a lower amount where sufficient to get the offender's attention and deter future abuses. *Stewart v. Am. Int'l Oil & Gas Co.*, 845 F.2d 196, 201–02 (9th Cir.1988).

Here, the bankruptcy court carefully considered the amount of Trustee's damages resulting from Orton's conduct. The court reasoned that, had the Note been properly disclosed, Trustee could have administered it without the expenses involved in reopening the closed bankruptcy case or the costs incurred in the discharge revocation action against Van Kayne. Of course, if the schedules had been accurate, Trustee would have had no occasion to pursue the present sanctions motion. As the bankruptcy court observed "[c]onsidering all of these factors, and the egregious nature of the conduct to which Orton admits, the court feels that sanctions of $20,000 are appropriate, both to make the estate whole and to deter future misconduct." Memorandum at 3–4.

We have carefully examined the attorney fee and expense requests made by Trustee and his counsel and conclude that the bankruptcy court could find them all to be reasonable. The amount eventually awarded by the bankruptcy court as a sanction against Orton, $20,000, was slightly less than the amount requested by Trustee, $20,977.75. Moreover, the bankruptcy court provided Orton with time to challenge the amount of the award in the bankruptcy court, but he failed to do so. Instead, in this appeal, he argues for the first time that it was an abuse of discretion for the bankruptcy court not to take into consideration his ability to pay.

Orton failed to raise the issue of his ability to pay in the bankruptcy court. "[A]n issue will generally be deemed waived on appeal if the argument was not 'raised sufficiently for the trial court to rule on it.'" *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 992 (9th Cir.2010) (quoting *Whittaker Corp. v. Execuair Corp.*, 953 F.2d 510, 515 (9th Cir. 1992)). Because he did not make it to the

bankruptcy court, Orton's argument has been waived.

 Even were we to entertain Orton's contention for the first time on appeal, we would reject it. For support, Orton cites to *Jackson v. The Law Firm of O'Hara, Ruberg, Osborne & Taylor*, 875 F.2d 1224, 1230 (6th Cir.1989) ("Failure to consider ability to pay is ... an abuse of discretion."). But while *Jackson* may establish the rule in the Sixth Circuit, we are bound to apply the precedents of the Ninth Circuit. In *Christian v. Mattel, Inc.*, 286 F.3d 1118 (9th Cir.2002), our Court of Appeals instructed that:

> The Advisory Committee's notes concerning the amendments indicate that an attorney's financial wherewithal is only one of several factors that a district court may consider in deciding the amount of sanctions. *See* Fed.R.Civ.P. 11, advisory committee notes, 1993 Amendments, Subdivisions (b) and (c). Here, [the offending attorney] had an opportunity to present specific financial information to the district court, but merely argued conclusorily that the sanctions would be "ruinous." The district court acknowledged this argument. *Nothing in Rule 11 mandates a specific weighing of this factor, however.*

*Id.* at 1125 n. 4 (emphasis added). The bankruptcy court could have considered, but was not mandated to address, Orton's financial circumstances in fixing the amount of the sanction in this case. Moreover, Orton presented no information to the bankruptcy court, or even in this appeal, regarding his inability to pay a $20,000 sanction. His argument on this point is therefore purely conclusory.

We conclude that the proceedings in the bankruptcy court were fair, the evidence solidly supported the bankruptcy court's findings, conclusions and sanctions award, and the amount of that award, $20,000,

was reasonable. The bankruptcy court did not abuse its discretion in awarding a sanction of $20,000 against Orton.

## CONCLUSION

Under the Rules and Code, a debtor's attorney is duty-bound to reasonably investigate the circumstances surrounding a bankruptcy case, and to ensure that the information included in bankruptcy schedules is well grounded in fact. Van Kayne's filings were, by omission of critical information, rendered patently false, something Orton knew at the time the schedules were filed, and a deficiency which he has never acted to correct. Because his conduct falls far below that expected of competent debtor's counsel, we AFFIRM the bankruptcy court sanctions order.