FILED

JUL 2 2020

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**ORDERED PUBLISHED**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>JASPER STEVENS and BRENDA LOUISE MURRAY STEVENS,<br>　　　　　Debtors. | BAP No. CC-19-1325-TaFL<br><br>Bk. No. 6:17-bk-15301-MH |
| JASPER STEVENS; BRENDA LOUISE MURRAY STEVENS,<br>　　　　　Appellants,<br>v.<br>ROBERT S. WHITMORE, CHAPTER 7 TRUSTEE,<br>　　　　　Appellee. | **OPINION** |

Appeal from the United States Bankruptcy Court
for the Central District of California
Mark D. Houle, Bankruptcy Judge, Presiding

APPEARANCES:
Appellants Jasper Stevens and Brenda Louise Murray Stevens, pro se, on brief; Douglas A. Plazak of Reid & Hellyer, APC on brief for appellee.

Before: TAYLOR, FARIS, and LAFFERTY, Bankruptcy Judges.

TAYLOR, Bankruptcy Judge:

1

## INTRODUCTION

Chapter 7[1] debtors Jasper Stevens and Brenda Louise Murray Stevens disclosed a civil suit in their statement of financial affairs but not in their schedule of assets and liabilities. And while they provided the chapter 7 trustee with information relevant to the lawsuit, they never amended their schedules. The lawsuit and its claims (collectively, the "Claims") were not administered before their chapter 7 case closed. Later, however, the bankruptcy court reopened the case and, at the request of the Trustee, approved a settlement that resolved them. Debtors appeal. They argue that the Trustee could not compromise the Claims because he technically abandoned them under § 554(c). We disagree, and we AFFIRM.

## FACTS

When Debtors filed their chapter 7 case, their lawsuit against Ocwen Loan Servicing, LLC[2] was pending. But, Debtors failed to disclose and value the Claims in their schedule of assets and liabilities. Instead, they listed the lawsuit as a pending action in their statement of financial affairs, discussed it with the Trustee, and provided copies of the pleadings to the Trustee. Despite this disclosure, the Trustee did not administer it through

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure.

[2] Ocwen Loan Servicing, LLC and its successor by merger, PHH Mortgage Corporation, are collectively referred to herein as "Ocwen."

sale or compromise. Instead, he issued a no asset report, which certified that the estate had been fully administered and reported $0.00 of abandoned assets. The bankruptcy court then discharged the Trustee and closed the case.

Debtors continued to prosecute the lawsuit. But as a summary judgment hearing approached, Ocwen proposed a settlement to the Trustee, who then withdrew the no asset report, obtained case reopening, and filed a settlement approval motion ("Motion"). Debtors opposed, arguing that the Trustee lacked settlement authority because, under § 554(c), he had abandoned the Claims on case closure.[3]

After hearing the arguments of the parties, the bankruptcy court determined that the Claims had not been abandoned and approved the settlement. Debtors timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (O). We have jurisdiction under 28 U.S.C. § 158.

---

[3]Debtors also argued that approval of the settlement was not warranted under the factors set forth in *Martin v. Kane (In re A & C Properties)*, 784 F.2d 1377, 1381 (9th Cir. 1986), and used to determine the propriety of trustee compromises. Because they did not raise this issue on appeal, we need not, and do not, address it.

## ISSUE[4]

Did the bankruptcy court err in determining that the Claims had not been abandoned under § 554(c)?

## STANDARD OF REVIEW

We review de novo the bankruptcy court's interpretation of the Bankruptcy Code and its determination that an estate asset was abandoned. *Mwangi v. Wells Fargo Bank, N.A. (In re Mwangi)*, 764 F.3d 1168, 1173 (9th Cir. 2014); *Killebrew v. Brewer (In re Killebrew)*, 888 F.2d 1516, 1519 (5th Cir. 1989).

## DISCUSSION

Debtors do not dispute that the Claims became property of their bankruptcy estate when they filed their chapter 7 petition or that the Trustee became the sole party with standing to prosecute the lawsuit, unless and until he abandoned the Claims under § 554. *See Turner v. Cook*, 362 F.3d 1219, 1225-26 (9th Cir. 2004); *CBS, Inc. v. Folks (In re Folks)*, 211 B.R. 378, 388 (9th Cir. BAP 1997). They contend, however, that the bankruptcy court abused its discretion in approving the compromise because the

---

[4] Debtors also contend that the bankruptcy court abused its discretion in approving an application to employ bankruptcy counsel filed by the Trustee. We do not address their contention because they failed to: (1) oppose the application, (2) file a notice of appeal of the employment order, and (3) argue, with citations to applicable authorities and portions of the record, why the bankruptcy court abused its discretion. Rules 8003(a)(1) and 8014(a)(8); *Mano–Y & M, Ltd. v. Field (In re Mortg. Store, Inc.)*, 773 F.3d 990, 998 (9th Cir. 2014).

Claims were technically abandoned before the Trustee filed the Motion. We disagree.

Abandonment of an asset can occur in two ways. First, under § 554(a) and (b), after notice and a hearing, a trustee may voluntarily abandon or may be compelled to abandon specific property of the estate that is "burdensome" or "of inconsequential value and benefit to the estate." And second, as relevant to this appeal, under § 554(c), "any property scheduled under section 521(a)(1) of this title [and] not otherwise administered at the time of the closing of a case is abandoned to the debtor . . . ." This type of abandonment is commonly referred to as a "technical abandonment." *Vasquez v. Adair (In re Adair)*, 253 B.R. 85, 88 (9th Cir. BAP 2000). Here, the sole issue is whether Debtors properly scheduled the Claims within the meaning of "scheduled" in § 554(c).

Section 521(a)(1)(B) requires, in pertinent part, that the debtor file "a schedule of assets and liabilities" and "a statement of the debtor's financial affairs." Debtors submit that the term "property scheduled under section 521(a)(1)," as used in § 554(c), refers to property disclosed in the schedule of assets and liabilities ("Schedules") *or the statement of financial affairs ("SOFA")*. The Trustee disagrees and argues that the phrase means *only* property disclosed in the Schedules.

The Ninth Circuit has yet to rule on this issue, but the majority of courts considering the issue have taken the strict approach advanced by the

5

Trustee. *See, e.g., Ashmore v. CGI Grp. Inc.*, No. 11 Civ. 8611 (AT), 2016 WL 2865153, at *4 (S.D.N.Y. May 9, 2016), *vacated and remanded on other grounds*, 923 F.3d 260 (2d Cir. 2019); *Swindle v. Fossey (In re Fossey)*, 119 B.R. 268, 272 (D. Utah 1990); *In re Winburn*, 167 B.R. 673, 676 (Bankr. N.D. Fla. 1993); *In re McCoy*, 139 B.R. 430, 431-32 (Bankr. S.D. Ohio 1991); *Tavormina v. Harris (In re Harris)*, 32 B.R. 125, 127 (Bankr. S.D. Fla. 1983); *In re Medley*, 29 B.R. 84, 86-87 (Bankr. M.D. Tenn. 1983).

And while we have not decided the issue under facts that precisely align with those in this appeal, we have also espoused the majority view. In *Orton v. Hoffman (In re Kayne)*, 453 B.R. 372 (9th Cir. BAP 2011), we held, in a case involving sanctions under Rule 9011 and § 707(b)(4)(D), that listing an action on promissory note in the SOFA did not result in its abandonment because "[m]entioning an asset in the statement of affairs is not the same as scheduling it." *Id*. at 384 (quoting *In re Kayne*, No. 09-12470, 2010 WL 2757346, at *2 n.2 (Bankr. N.D. Cal. July 11, 2010), *aff'd*, 453 B.R. 372 (9th Cir. BAP 2011)). And relying on *Kayne*, in *Pretscher-Johnson v. Aurora Bank, FSB (In re Pretscher-Johnson)*, BAP No. NC-16-1180-BTaF, 2017 WL 2779977, *5 (9th Cir. BAP May 31, 2017), we noted a lack of sufficient notice to the trustee or creditors of unscheduled claims and held that listing a quiet title action without a value in the SOFA was insufficient to effect an abandonment on case closure.

Further, we determined in *Pace v. Battley (In re Pace)*, 146 B.R. 562, 566

(9th Cir. BAP 1992), *aff'd,* 17 F.3d 395 (9th Cir. 1994), a case discussing express abandonment under § 554(a), that technical abandonment requires proper scheduling of an asset, and "it is not sufficient that the trustee knew of the property's existence at the time that the case was closed." *Id.* at 566.

But a minority view exists; some courts have held that assets listed in the SOFA are scheduled. *See, e.g., United States ex. rel. Fortenberry v. Holloway Grp., Inc.,* 515 B.R. 827, 829 (W.D. Okla. 2014); *West v. Jeppesen (In re Krachun),* No. 15-2016, 2015 WL 4910241, at *6 (Bankr. D. Utah Aug. 14, 2015); *In re Hill,* 195 B.R. 147, 150-51 (Bankr. D.N.M. 1996).

And under the unique facts of one case, we questioned a rigid technical abandonment prerequisite that assets be included in the Schedules. *See Nasseri v. Tadayon (In re Tadayon),* BAP No. NV-18-1119-BKuTa, 2019 WL 1923044, at *6 (9th Cir. BAP Apr. 29, 2019). In *Tadayon,* however, the trustee, among things, provided a notice of abandonment that included a detailed description of the unscheduled asset as well as a more general no asset report but, for unknown reasons, failed to present a proposed order approving his abandonment motion. *Id.* at *6. Thus, it is best read as a case involving express abandonment under § 554(a). Accordingly, we do not find it persuasive in a case not involving its highly unusual factual circumstances.[5]

---

[5] In *Tadayon,* we relied heavily on *In re Hill.* In that case, the notice of

(continued...)

Rather, we follow the majority's plain language reading of § 554(c). That is, the word "scheduled" in § 554(c) refers only to assets listed in a debtor's Schedules.

On its face, § 554(c) provides that an asset must be "scheduled under section 521(a)(1)" to be technically abandoned. If Congress intended the "scheduled" assets referenced in § 554(c) to include assets listed only obliquely in the SOFA, then it could have, and should have, drafted § 554(c) to refer to assets "listed or scheduled under section 52l(a)(1)." This view is supported by a review of another Code provision where Congress referred to a debt "neither listed nor scheduled under section 521(a)(1)." *See* § 523(a)(3). If we read "scheduled" in § 554(c) as synonymous with "listed," as Debtors urge, then "listed" in § 523(a)(3) becomes impermissibly superfluous. *See Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253 (1992) ("[C]ourts should disfavor interpretations of statutes that render language superfluous."). And if we adopt the minority interpretation, we also run afoul of the canon of statutory interpretation providing that "where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or

___

[5](...continued)
abandonment abandoned "any and all assets listed *on the statements* and schedules filed in this case . . . ." 195 B.R. at 148 (emphasis added). Again, that case, in essence, involved an express abandonment of assets listed in the SOFA.

exclusion." *United States v. Wahid*, 614 F.3d 1009, 1014 (9th Cir. 2010) (quoting *APL Co. Pte., Ltd. v. UK Aerosols Ltd.*, 582 F.3d 947, 952 (9th Cir. 2009).

Moreover, this narrow reading of § 554(c) is consistent with sound bankruptcy policies and reasonable expectations for a debtor's performance of statutory duties.

First, it encourages debtors to fulfill the critical § 521(a)(1) duty to carefully, completely, and accurately disclose all their property in their Schedule A/B under penalty of perjury. *See Cusano v. Klein*, 264 F.3d 936, 946 (9th Cir. 2001). Accurate Schedules apprise all parties to the case of the debtor's financial situation, including the value of the debtor's assets. The SOFA does not similarly require valuation of assets. The bankruptcy system cannot function fairly, effectively, and efficiently unless creditors and trustees can count on debtors to scrupulously comply with their duty to disclose and value assets in the Schedules. *See In re Medley*, 29 B.R. at 87 (Sections 521 and 554 "act in concert to relieve the trustee from the burden of conducting a rigorous search of the debtor's records to discover assets of the estate by providing him with a ready schedule of the debtor's property interests.").

Second, requiring debtors to properly disclose assets in the Schedules is not an undue burden. A debtor has a continuing opportunity to get the Schedules right before case closure; Rule 1009(a) permits a debtor to amend

the Schedules "as a matter of course at any time before the case is closed." Thus, a mere mistake or omission can be corrected; our statutory interpretation does not bar technical abandonment in a procrustean fashion.

Third, this requirement advances the goal of a fully transparent bankruptcy process. As mentioned, it assists a trustee in the performance of critical statutory duties. But, the bankruptcy court and all creditors also have a right to full knowledge of a debtor's assets and a complete understanding of technical abandonment risk in a case. Thus, a trustee's acquisition of asset information is not a sufficient substitute for inclusion in the Schedules because the bankruptcy court and creditors remain in the dark. Appropriately, the Code does not require the trustee to make disclosures where the debtor fails in his statutory duty to schedule his assets.

Moreover, a rule that a trustee's knowledge of an asset or its casual inclusion in the SOFA or both could suffice as the basis for technical abandonment would foster litigation. In the place of a bright line rule that assets must be scheduled before technical abandonment occurs, bankruptcy courts would be required to determine whether the unique facts of a case justify technical abandonment. The inefficiency of this result is clear.

For all these reasons, we hold that technical abandonment requires

inclusion of an asset in the Schedules. Thus, the bankruptcy court did not err in concluding that the Claims were not technically abandoned. And, accordingly, it did not abuse its discretion in approving the compromise.

## CONCLUSION

Based on the foregoing, we AFFIRM.