FILED

OCT 21 2014

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | | |
|---|---|---|
| In re: | ) | BAP No. NV-13-1294-PaJuHl |
| | ) | |
| JODY MARIE CUOMO, | ) | Bankr. No. 10-14813 |
| | ) | |
| Debtor. | ) | Adv. Proc. 12-01124 |
| _____ | ) | |
| ANTHONY J. DELUCA, Esq. | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | **M E M O R A N D U M**[1] |
| | ) | |
| JODY MARIE CUOMO, | ) | |
| | ) | |
| Appellee. | ) | |
| _____ | ) | |

Argued and Submitted on September 18, 2014
at Las Vegas, Nevada

Filed - October 21, 2014

Appeal from the United States Bankruptcy Court
for the District of Nevada

Honorable Bruce A. Markell, Bankruptcy Judge, Presiding

Appearances: Christopher Burke argued for appellant Anthony J. DeLuca; Dennis M. Prince of Prince & Keating LLP argued for appellee Judy Marie Cuomo.

Before: PAPPAS, JURY and HOULE,[2] Bankruptcy Judges.

---

[1] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

[2] The Honorable Mark D. Houle, Bankruptcy Judge for the Central District of California, sitting by designation.

Attorney Anthony J. DeLuca ("DeLuca") appeals an order of the bankruptcy court imposing sanctions against him and ordering a partial disgorgement of fees he received. We AFFIRM.

**FACTS**

**A. The Three Bankruptcy Cases**

On November 15, 2006, chapter 7[3] debtor Jodie Marie Cuomo ("Cuomo") borrowed $96,000, at 6 percent annual interest, from Patricia Ritchie ("Ritchie") as a personal loan (the "Ritchie Debt"). Although Cuomo acknowledges the debt, she never made any payments on the Ritchie Debt.

Cuomo filed a chapter 7 petition on April 27, 2009. Bankr. 09-16409-BAM (the "First Case"). Ritchie was listed on a creditor list attached to the petition, but with no address. The First Case was dismissed on June 18, 2009, because Cuomo failed to file schedules. § 521(I).

Cuomo filed a second chapter 7 petition on July 9, 2009. Bankr. 09-22203-BAM (the "Second Case"). In an amended Schedule F, and the list of Cuomo's creditors filed in the Second Case, Cuomo listed a personal loan she had received from Ritchie of "$100,000"; this debt comprised 17.9 percent of Cuomo's total listed unsecured nonpriority claims. The Second Case was dismissed on October 27, 2009, this time because Cuomo had apparently failed to comply with prebankruptcy credit counseling

---

[3] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, all Rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037, and all Civil Rule references are to the Federal Rules of Civil Procedure 1–86.

requirements.  § 109(h).[4]

Represented by DeLuca, Cuomo filed a third chapter 7 petition (the "Third Case") on March 23, 2010.  The Ritchie Debt was not listed in the mailing matrix or schedules originally filed in connection with the Third Case.  After the trustee filed a no asset report, discharge was granted on July 1, 2010, and the Third Case closed on July 16, 2010.

Ritchie assigned the Ritchie Debt to George Kelly ("Kelly") in October 2011.  Kelly promptly sued Cuomo for breach of contract in Nevada state court to collect the Ritchie Debt (the "State Court Action").

On April 12, 2012, DeLuca filed a "Motion to Reopen Chapter 7 Case Combined with Motion for Order to Show Cause Why Sanctions Should Not be Imposed against Gregory Kelly" (the "Reopen Motion") in the Third Case.  Then, on April 29, 2012, DeLuca assisted Cuomo in filing an amended Schedule F (the "Amended Schedule F") which indicated that she had an unsecured debt for a $96,000 personal loan from Ritchie; this debt comprised over half of the total unsecured nonpriority claims listed in Amended Schedule F.

The bankruptcy court heard the parties on the Reopen Motion on May 10, 2012.  Kelly appeared pro se and Cuomo was represented

---

[4]  Two attorneys from the "Nevada Law Group," not DeLuca, represented Cuomo in the First Case and Second Case.  The bankruptcy court later sanctioned the two attorneys under Civil Rule 11/Rule 9011 and ordered them to disgorge their fees.

-3-

by G. Layne Nordstrom of the Nordstrom Law Office.[5]  The court granted the motion to reopen the bankruptcy case, and ruled that Kelly had violated the discharge injunction.  However, the court also decided that Kelly had acted in good faith in pursuing the State Court Action, and so declined to sanction him:

> What I'm going to do is I'm not going to order sanctions because you proceeded in good faith.  But at the same time, I can't let stand the actions that you have already obtained.  You need to come into this court . . . and get a determination that the debt is nondischargeable on a going-forward basis. . . .  And I'll open the case.  I'll leave the case open for you to — I'll give you 30 days to do that.

Hr'g Tr. 8:5-12, May 10, 2012.

## B.  The Adversary Proceeding

Kelly commenced an adversary proceeding against Cuomo on June 15, 2012.  In the complaint, Kelly sought an exception to discharge for the Ritchie Debt pursuant to § 523(a)(2)(A), and denial of discharge pursuant to §§ 727(a)(2)(A), (a)(2)(B), (a)(3), (a)(4)(A), and (a)(5).

DeLuca alleges that Cuomo declined his offer to represent her in the adversary proceeding; on June 28, 2012, he sent Cuomo a letter confirming he was not representing her in the action, reminding her of the first court appearance date, and recommending she seek other counsel.

Cuomo, acting pro se, filed an answer to the Kelly complaint on October 24, 2012, generally denying all of its allegations.  Then, on January 9, 2013, Cuomo filed a motion for summary judgment.  Briefs and supplemental briefs were filed by both

---

[5] Nordstrom was an appearance counsel for DeLuca.

-4-

Kelly and Cuomo. Kelly did not appear at the summary judgment hearing on February 26, 2013. The bankruptcy court entered a partial summary judgment in favor of Cuomo on April 1, 2013, dismissing the § 727 denial of discharge claims, but directing that a trial proceed on the § 523(a)(2)(A) exception to discharge fraud claim.

In the summary judgment motion, Cuomo alleged that she had informed DeLuca about the existence of the Ritchie Debt before filing the Third Case, and that he had given her a copy of a pre-filing Schedule F to review which listed the Ritchie Debt. Based on these allegations, on March 11, 2013, the bankruptcy court issued its "Order to Show Cause Why Attorney Anthony J. DeLuca Should Not Be Sanctioned for Failing to List a Known Debt on Debtor's Bankruptcy Schedules and Failing to Represent Debtor in this Adversary Proceeding" (the "Initial OSC"). The Initial OSC ordered DeLuca to explain whether:

> (1) he performed competently by failing to list the Ritchie Debt in the Third Petition in light of Cuomo's allegation that he was previously aware of the debt and of the Second [Case's] scheduling of the debt; (2) he had charged for his services to reopen the case and amend the schedules and, if so, why he had not filed a supplemental Rule 2016(b) statement of compensation; (3) any additional fees were reasonable in the amount; and (4) nonrepresentation in the adversary proceeding was reasonable and whether Cuomo had given informed consent to representation only in the main bankruptcy case.

The Initial OSC also informed DeLuca that the bankruptcy court harbored concerns about his compliance with Nev. R. Prof'l Conduct ("Nev. R.") 1.1 (failure to meet threshold level of skill and thoroughness), Nev. R. 1.2 (limitation on services must be reasonable and with consent), Nev. R. 1.5 (fees must be

-5-

reasonable), and Rule 2016(b) (requiring disclosure of compensation paid to a debtor's attorney). The court set a hearing on the Initial OSC for April 2, 2013.

DeLuca filed a response to the Initial OSC on March 25, 2013, arguing that he had provided Cuomo with a copy of her current credit report and, before she signed the Schedule F that he prepared and filed in the Third Case, Cuomo had reviewed it for accuracy. DeLuca denied that he provided to Cuomo for her review any Prefiling Schedule F that included the Ritchie Debt, and he accused his former client of seeking to mislead the bankruptcy court. Finally, DeLuca represented that he was not compensated for any of the post-discharge legal services he provided to Cuomo and, thus, there was no need to amend his otherwise accurate Rule 2016(b) disclosure filed in the Third Case.

On March 27, 2013, the bankruptcy court amended the OSC (the "Amended OSC"). In addition to the directions in the Initial OSC, the court now required that DeLuca also be prepared to explain at the hearing why he did not list the Ritchie Debt in the Original Schedule F, although it had been previously listed in the Schedule F filed in the Second Case. In addition to the Nevada Rules and Rule 2016(b), the Amended OSC warned that DeLuca's performance may also have violated § 707(b)(4)(C)(I) (requiring that a debtor's attorney "perform a reasonable investigation into the circumstances that gave rise to the petition").

DeLuca filed a response to the Amended OSC on March 29, 2013. DeLuca argued that he should not be required to review the

schedules in Cuomo's previous bankruptcy cases, especially in light of the poor quality of those previous petitions and schedules. Additionally, DeLuca suggested that the bankruptcy court was targeting him for sanctions and was ignoring evidence that Cuomo was perpetrating a fraud on the court by alleging the existence of the Prefiling Schedule F.

At the hearing on April 2, DeLuca and Cuomo appeared. When asked by the bankruptcy court if he intended to offer evidence or other arguments, DeLuca indicated that he would rely on his submitted papers, but would answer any questions from the bankruptcy court. When Cuomo asked to be put under oath to testify, the court explained to her that, if she testified, she would be subject to cross-examination. The court instead permitted Cuomo to read a statement into the record, not under oath. DeLuca responded to the statement. The court took the matter under submission.[6]

On June 20, 2013, the bankruptcy court filed its "Opinion

---

[6] Before the bankruptcy court reached a decision on the Amended OSC, in an unrelated proceeding, on April 9, 2013, the same bankruptcy judge entered an "Opinion Sanctioning Attorney Anthony J. DeLuca for Failing to Represent Wayne A. Seare in This Adversary Proceeding [12-1108-BAM]" (the "Seare Opinion"). Dignity Health v. Seare (In re Seare), 493 B.R. 158 (Bank. D. Nev. 2013), aff'd, DeLuca v. Seare (In re Seare), 515 B.R. 599 (9th Cir. BAP 2014). Based on bias against him which he alleged was evident from comments made in the Seare Opinion, DeLuca filed a motion in the Cuomo adversary proceeding to recuse the bankruptcy judge. Judge Markell referred the recusal motion to the Chief Judge of the Nevada Bankruptcy Court. Chief Judge Nakagawa heard the motion on May 29, 2013, and entered an order and eleven-page memorandum denying the recusal motion on June 3, 2013.

-7-

Sanctioning Attorney Anthony J. DeLuca for Failing to Schedule a Known Debt and Granting His Motion to Withdraw as Counsel for Jody Marie Cuomo" (the "Sanction Opinion"). The court began the Sanction Opinion with several factual findings.

First, the bankruptcy court discussed the dispute between Cuomo and DeLuca concerning the alleged Prefiling Schedule F. Cuomo argued that DeLuca's staff gave her a copy of the Prefiling Schedule F that included the Ritchie Debt, which Cuomo argued was evidence that she had provided information to him about that debt before DeLuca filed the petition in the Third Case. The court found that the Prefiling Schedule F was actually a copy of the Amended Schedule F that was filed postpetition:

> This does not necessarily mean, however, that Cuomo acted in bad faith by asserting otherwise. The court believes that she entered DeLuca's office in November 2012 and asked for a copy of the prefiling draft [of Schedule F] and that the secretary gave her the then-current [Amended Schedule F]. In other words, Cuomo believed this document to be what she purported it to be based on the response from DeLuca's office staff. That being said, the court does not believe that DeLuca, or his staff, acted in bad faith either by giving her the [Amended Schedule F]. It was likely the document most readily available, and possibly DeLuca did not have a copy of the [Prefiling Schedule F] available.

Sanction Opinion at 12.

The other factual issue examined by the bankruptcy court concerned the degree of personal attention that DeLuca gave to Cuomo's representation. In its decision, based on the uncontradicted statements of Cuomo, "the court finds that DeLuca never personally met with Cuomo, or even talked with her over the phone, during the course of representation." Sanction Opinion at

13.[7]

The bankruptcy court began its legal analysis in the Sanction Opinion by rejecting DeLuca's suggestion that the bankruptcy judge was targeting DeLuca for sanctions, relying on Chief Judge Nakagawa's denial of DeLuca's motion to recuse in the adversary proceeding.[8]

The bankruptcy court then determined that DeLuca had violated Nev. R. 1.1 because he had a duty to review the previous bankruptcy petitions and schedules that Cuomo had filed in her First Case and Second Case. The court reasoned:

> Had he done so, he would have discovered that the [Ritchie Debt] was still owing and would have scheduled it (assuming with little doubt that Cuomo would have agreed to schedule it). She thus would have benefitted from Rule 4007's deadline for dischargeability complaints and she may not be embroiled in this adversary proceeding.

Sanctions Opinion at 21.

As to DeLuca's possible violation of Nev. R. 1.2(c) (limitation on services must be reasonable and with consent), the bankruptcy court distinguished the Third Case from the factual situation in another recent case involving DeLuca and the bankruptcy judge, In re Seare, where DeLuca had purported to exclude representation of the debtor in adversary proceedings from his flat fee and completely refused to provide the extra services. 493 B.R. at 190. In this case, the court noted,

---

[7] DeLuca has not challenged this factual finding in this appeal.

[8] In this appeal, DuLuca has not continued his argument that the bankruptcy court was biased.

-9-

DeLuca had offered to represent Cuomo in the adversary proceeding, but she declined his continued services because they were unaffordable. On this record, the bankruptcy court found that DeLuca did not violate Nev. R. 1.2(c). Sanction Opinion at 21-22.

Since DeLuca did not charge or receive any fees for post-discharge work, the bankruptcy court also ruled that DeLuca did not violate Nev. R. 1.5 or Rule 2016(b). Sanction Opinion at 22.

Finally, the bankruptcy court ruled that DeLuca had not performed a meaningful independent investigation into the circumstances giving rise to Cuomo's bankruptcy petition and had violated § 707(b)(4)(C)(I):

> He only reviewed past filings to determine her eligibility without any review of her past schedules. He relied solely on the information she provided about her creditors. Broadly put, the circumstance that drove her to bankruptcy was total debt of approximately $160,000 [], only about $60,000 of which appeared on the Third Petition. Had he performed a reasonable investigation by reviewing the prior petition, he would have discovered that about one-third of her debt did not appear on the Third Petition. . . . Cuomo did everything that DeLuca told her to do. She reviewed the draft petitions in good faith and unfortunately failed to spot the omitted Ritchie Debt. As under Nevada Rule 1.1, DeLuca nonetheless had the affirmative duty under Section 707(b)(4)(C) to go beyond the information provided by Cuomo and, at the very least, to ask why the Ritchie Debt was omitted. For these reasons, DeLuca violated Section 707(b)(4)(C).

Sanction Opinion at 24.

As a sanction for DeLuca's violation of Nev. R. 1.1 and § 707(b)(4)(C), pursuant to its inherent authority under § 105(a), and under § 329(b) and § 526(c), the bankruptcy court ordered DeLuca to disgorge $851.00 of the total fees he received

-10-

from Cuomo of $1,499. The court justified this amount by reasoning that the disgorgement was 56.8 percent of his flat fee, which reflected that the Ritchie Debt of $96,000 was 56.8 percent of her total scheduled unsecured nonpriority debt of $168,958. Sanction Opinion at 32.[9]

DeLuca attempted to appeal the Sanction Opinion on June 24, 2013; however, the Panel remanded the matter to the bankruptcy court on July 12, 2013, for entry of an order effectuating the Sanction Opinion. An "Order on Proceeding to Show Cause Why Attorney Anthony J. DeLuca Should Not Be Sanctioned for Failing to List a Known Debt on Debtor's Bankruptcy Schedules and Failing to Represent Debtor in this Adversary Proceeding" was entered on July 17, 2013. DeLuca filed a timely appeal.[10]

**JURISDICTION**

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A). The Panel has jurisdiction under 28 U.S.C. § 158.

**ISSUES**

Whether the bankruptcy court violated DeLuca's due process rights.

Whether the bankruptcy court abused its discretion in

---

[9] The Sanction Opinion and subsequent order also granted DeLuca's request to withdraw as counsel to Cuomo.

[10] In their appellate briefs, the parties note that, after the filing of this appeal, DeLuca asked the bankruptcy court to seal the Sanction Opinion. The bankruptcy court denied DeLuca's motion on July 1, 2013. DeLuca did not amend the notice of appeal to include this denial, nor has he argued that the order denying the sealing was improper.

-11-

imposing sanctions on DeLuca.

## STANDARDS OF REVIEW

Whether procedures used by the bankruptcy court violated an individual's due process rights is a mixed question of law and fact that we review de novo. Willborn v. Gallagher (In re Willburn), 205 B.R. 202, 206 (9th Cir. BAP 1997) (citing Rose v. United States, 905 F.2d 1257, 1259 (9th Cir. 1990)).

A bankruptcy court's decision to impose sanctions is reviewed for abuse of discretion. In re Nguyen, 447 B.R. 268, 276 (9th Cir. BAP 2011) (en banc); accord Chambers v. NASCO, Inc., 501 U.S. 32, 55 (1991). The bankruptcy court's choice of sanctions is also reviewed for abuse of discretion. U.S. Dist. Ct. for E.D. Wash. v. Sandlin, 12 F.3d 861, 865 (9th Cir. 1993). A sanction order directing disgorgement of an attorney's fees is reviewed for abuse of discretion. Hale v. U.S. Tr. (In re Basham), 298 B.R. 926, 930 (9th Cir. BAP 1997), aff'd, 152 F.3d 924 (9th Cir. 1998). A bankruptcy court abuses its discretion if it applies an incorrect legal standard, misapplies the correct legal standard, or if its factual findings are illogical, implausible or without support from evidence in the record. TrafficSchool.com v. Edriver Inc., 653 F.3d 820, 832 (9th Cir. 2011) (citing United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009)(en banc)).

## DISCUSSION

The bankruptcy court determined that DeLuca violated Nev. R. 1.1 and § 707(b)(4)(C), and it sanctioned him. We find no abuse of discretion in the court's decisions.

-12-

**I.**

**The bankruptcy court did not violate DeLuca's due process rights.**

The bulk of DeLuca's arguments in this appeal concern his contention that the bankruptcy court did not treat him fairly, and violated his right to due process, in the sanction proceedings. In particular, DeLuca suggests three ways in which his due process rights were abused: (1) the bankruptcy court provided insufficient notice to DeLuca concerning the basis for the possible sanctions and did not allow him adequate time to prepare a response; (2) the court did not hold an evidentiary hearing; and (3) the court did not consider expert testimony before finding that DeLuca had breached his duties to Cuomo.

**A. Notice.** As to the fairness of the notice given to him, DeLuca argues that:

> To satisfy due process, a bankruptcy court must determine that the party to be sanctioned was provided sufficient notice of the potential sanctions under § 105(a). [Deville v. Cardinale (]In re Deville[)], 280 B.R. 483, 497-97 (9th Cir. BAP 2004) ("Generally, the bankruptcy court's power to sanction attorneys must specify the authority for the sanction, as well as the sanctionable conduct."). Id. at 496.

Deluca Op. Br. at 12.

Sanctions for an attorney's unprofessional conduct implicate a court's inherent powers. Jackson v. United States, 881 F.2d 707, 711 (9th Cir. 1988) ("[A]ll courts possess an inherent power to prevent unprofessional conduct by those attorneys who are practicing before them. This authority extends to any unprofessional conduct[.]"); accord In re Snyder, 472 U.S. 634, 645 n.6 (1985) (noting that the state code of professional responsibility did not by its own terms apply to attorney

-13-

sanctions in the federal courts, but that federal courts in exercising their inherent power under the standards imposed by federal law may charge attorneys with the knowledge of, and conformity to, the state codes).

The decision in In re Deville stands for precisely the opposite position suggested by DeLuca. In Deville, the bankruptcy court issued two orders to show cause to an attorney as to why he should not be sanctioned for removing an action to the bankruptcy court to harass a plaintiff and cause unnecessary delay and expenses in state court proceedings. Both orders described the alleged objectionable conduct. But on appeal of the sanctions order, the sanctioned attorney argued that "notice was deficient because the bankruptcy court . . . did not specifically state that it was also considering exercising its inherent authority." Id. at 497.

The BAP in Deville reasoned that the bankruptcy court had described the objectionable conduct and "the Appellants were also given the opportunity to respond in writing, and to appear and testify at a hearing. This notice satisfied due process, and placed Appellants on notice that the court's inherent authority was implicated." Id.

Similar to the Panel's reasoning in Deville, we conclude that the bankruptcy court was not required to explicitly inform DeLuca that it was preparing to sanction him under the court's inherent powers. The title to the two show cause orders warned DeLuca that the bankruptcy court was considering the imposition of sanctions against him. The bankruptcy court clearly identified the objectionable behavior in both OSCs as

-14-

unprofessional behavior in violation of, among other rules, Nev. R. 1.1 and § 707(b)(4)(C), violations properly addressed by the court's inherent powers. Snyder, 472 U.S. at 645 n.6 (1985). Like the Deville case, the bankruptcy court directed DeLuca to respond to the OSCs and to include any "admissible evidence" to be presented at the hearing. DeLuca responded to both the OSCs, attached evidence, and appeared at the hearing. We conclude the notice given to DeLuca concerning the sanctions proceedings satisfied due process requirements.

A variation on DeLuca's notice argument is that the bankruptcy court gave him insufficient time to consider whether he should be subject to sanctions for violating § 707(b)(4)(C)(i). DeLuca is apparently not arguing that the bankruptcy court failed to notify him that sanctions would be considered under the Bankruptcy Code, rather than the professional rules or Bankruptcy Rules. Instead, DeLuca's objection is simply that the Amended OSC containing the court's direction that he be prepared to address § 707(b)(4)(C) was given to him only six days before the hearing on the OSCs.[11]

"The fundamental question related to due process is whether Appellants received any type of notice that was reasonably calculated under all the circumstances to apprise them of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Central Hanover Bank & Trust Co.,

---

[11] At the hearing before the Panel, counsel for DeLuca conceded that DeLuca had adequate knowledge of the nature of the court's concerns, but only objected to the lack of time to respond.

339 U.S. 306, 314 (1950). In applying <u>Mullane</u> in this circuit, the Ninth Circuit has consistently held that one cannot establish a violation of his due process rights without first establishing that he was prejudiced by the alleged denial of due process. When a party offers no evidence of prejudice, any deficiency in providing due process to that party is harmless. <u>Rosson v. Fitzgerald (In re Rosson)</u>, 545 F.3d 764, 776 (9th Cir. 2008); <u>City Equities Anaheim, Ltd. v. Lincoln Plaza Dev. Corp. (In re City Equities Anaheim, Ltd.)</u>, 22 F.3d 954, 959 (9th Cir. 1994).

Beyond complaining that he had only six days to prepare his response to the additional § 707(b)(4)(C) charge, DeLuca has shown no prejudice. Indeed, DeLuca fails to acknowledge that he had sufficient time to address the Amended OSC in an eight-page response, plus fourteen pages of exhibits. Further, at the hearing on the OSCs, DeLuca replied to the bankruptcy court's offer to make a statement with the comment, "I have nothing further to submit other than what's been pled through the pleadings." Hr'g Tr. 3:13-15, April 2, 2013. Notably, neither in his responsive papers nor at the bankruptcy court hearing did DeLuca suggest that he had insufficient time to address § 707(b)(4)(C)(I), nor did he request more time to consider the issue. We conclude that DeLuca was not prejudiced by the six-day notice of the Amended OSC.

**B. Evidentiary hearing.** DeLuca cites to three cases to support his position that the bankruptcy court was required to hold an evidentiary hearing in these sanctions proceedings: <u>Lentino v. Fringe Employee Plans, Inc.</u>, 611 F.2d 474, 484

(3d Cir. 1979); Bonhiver v. Rotenberg, Schwartzman Richards, 461 F.2d 925 (7th Cir. 1972); and Royal Ins. Co. Of Am. v. Miles & Stockbridge, PC, 138 F.Supp.2d 695, 700 (D. Md. 2001). But none of these cases deal with sanctions; they are all legal malpractice cases.

Here, as she clearly indicated to the bankruptcy court, Cuomo was not asserting a legal malpractice claim against DeLuca: "It was no one's intent to get Mr. DeLuca in trouble with the court, merely to defend myself in the case Mr. Kelly filed concerning Pat Richie." Hr'g Tr. 17:18-20. In addition, the OSCs issued by the bankruptcy court described the nature of the sanctions proceedings and the specific sanctions the court might impose. Simply put, this was not a malpractice action; it was initiated by the bankruptcy court solely to determine, based on DeLuca's conduct in this case, whether he should be sanctioned under the bankruptcy court's inherent powers and the Bankruptcy Code.

The Ninth Circuit has unambiguously ruled that evidentiary proceedings are not required in sanctions proceedings, and whether to require such a hearing is a matter committed to the discretion of the trial court.

> When necessary, the district court may hold an evidentiary hearing on a motion for sanctions." Wyle v. R.J. Reynolds Indus., Inc., 709 F.2d 585, 592 (9th Cir. 1983). Hence, the district court has the discretion, but is not required, to hold an evidentiary hearing prior to imposing sanctions on a party.

Lambright v. Ryan, 698 F.3d 803, 825-26 (9th Cir. 2012). The Lambright court went beyond this general principle to rule that a party's due process rights in a sanction proceeding do not

-17-

require an evidentiary hearing.

> Indeed, in cases in which the sanctioned party argued that it was deprived of due process because the district court failed to conduct an evidentiary hearing . . . we have held that "[t]he opportunity to brief the issue fully satisfies due process requirements." <u>Pac. Harbor Capital, Inc. v. Carnival Air Lines, Inc.</u>, 210 F.3d 1112, 1118 (9th Cir. 2000).

<u>Lambright</u>, 698 F.3d at 825-26; <u>see also</u>, <u>Molski v. Evergreen Dynasty Corp</u>., 500 F.3d 1047, 1058-59 (9th Cir. 2007) ("in a case involving sanctions levied against an attorney, . . . an opportunity to be heard does not require an oral or evidentiary hearing on the issue, instead . . . the opportunity to brief the issue fully satisfies due process requirements").

Finally, as discussed earlier, DeLuca never requested an evidentiary hearing. At the hearing on April 2, 2013, the court informed the parties how it wished to proceed:

> THE COURT: I'm open to the way to conduct this, but the best way I would think would be to have you respond with anything beyond what you have in writing and then to the extent that either Ms. Cuomo or Mr. Kelly wants to say anything, they may, and then I'll have you have a reply.
>
> DELUCA: I have nothing further to submit other than what's been pled through the pleadings, but I'll reserve the right to reply.

Hr'g Tr. 3:9-16.

In short, DeLuca not only did not request an evidentiary hearing, he was given the opportunity by the court to expand on his pleadings, but rested on those pleadings.

DeLuca challenges in this appeal the court's finding that he never communicated personally or by telephone, alleging that the only source for that information was the statement read into the record at the hearing by Cuomo: "This despite the fact that I've

-18-

never even talked to Mr. DeLuca personally [] nor have I ever seen him[.]" Hr'g Tr. 18:6-8. Since this was not an evidentiary hearing, and Cuomo's statement was not under oath, DeLuca suggests that the court could not base its finding that DeLuca never met with his client on that statement.

Under the terms of the hearing set up by the court and agreed to by DeLuca, Cuomo could present further argument and DeLuca explicitly "reserve[d] the right to reply." Hr'g Tr. 3:16. DeLuca made an extended reply to Cuomo's statement, countering in detail her allegations regarding the Prefiling Schedule F, but was conspicuously silent regarding her statement that he had no personal contact with her. Under these circumstances, it was certainly within his knowledge and without the need for preparation to state on the record if he had such personal contacts.

The bankruptcy court did not abuse its discretion when it did not conduct an evidentiary hearing in this sanctions proceeding.

**C. Expert testimony.** DeLuca also argues that expert testimony was required for the bankruptcy court to measure the propriety of his actions. The cases he cites for this proposition, again, concern claims for legal malpractice, not sanctions.

The principal case relied upon by DeLuca, Fishow v. Simpson, 55 Md. App. 312 (Md. Ct. App. 1983), concerned a malpractice claim where the lawyer "allegedly failed to adequately investigate, ascertain and present to the court medical evidence" regarding drug interactions and psychatric conditions. Id. at

-19-

545. While, considered in context, we can well understand the appellate court's ruling that, "under the facts of this case," expert testimony involving drug and psychiatric issues would be beyond the common knowledge of a trial judge or jury such that expert testimony would be required before the fact-finder could decide whether the lawyer misperformed. But we do not consider such abstruse subjects here.

The proper standard of diligence to be observed by a debtor's attorney in representing his client in preparing the schedules in a fairly simple bankruptcy case is a matter clearly within the knowledge of an experienced bankruptcy judge such as the one presiding in this case. It must be remembered that bankruptcy judges only deal with bankruptcy cases. As a result, bankruptcy judges have special expertise in bankruptcy law in general, and in particular, in evaluating the services performed by the bankruptcy attorneys appearing in their courts, sometimes on a daily basis. United States v. Camino Real Landscape Contr., Inc. (In re Camino Real Landscape Contr., Inc.), 882 F.2d 1503, 1508 (9th Cir. 1987) (relying on the expertise of the bankruptcy court and its "almost daily" experience in bankruptcy-related matters).

Where the trier of fact is reasonably well equipped to interpret the facts without enlightenment from experts, expert testimony is superfluous. Boleman Law Firm, PC v. U.S. Tr., 355 B.R. 548, 555 (E.D. Va. 2007). This is such a case. It was not an abuse of discretion for the bankruptcy court to not consider expert testimony concerning whether DeLuca acted appropriately in representing Cuomo.

We conclude that the bankruptcy court did not violate the due process rights of DeLuca.

## II.

### The bankruptcy court did not abuse its discretion in sanctioning DeLuca.

"Bankruptcy courts have the inherent authority to regulate the practice of attorneys who appear before them." In re Nguyen, 447 B.R. at 280 (citing Chambers v. NASCO, Inc., 501 U.S. at 43-45); Caldwell v. Unified Capital Corp. (In re Rainbow Magazine, Inc.), 77 F.3d 278, 284-85 (9th Cir. 1996)). Bankruptcy courts have express authority under the Code and the Rules, and under its inherent authority, to sanction attorneys. Price v. Lehtinen (In re Lehtinen), 564 F.3d 1052, 1058 (9th Cir. 2009). The bankruptcy court has "wide discretion in determining the amount of a sanctions award." Orton v. Hoffman (In re Kayne), 453 B.R. 372, 386 (9th Cir. BAP 2011).

All attorneys practicing in the district and bankruptcy courts of the District of Nevada are subject to the Nevada Rules of Professional Conduct:

> An attorney admitted to practice pursuant to any of these Rules shall adhere to the standards of conduct prescribed by the Model Rules of Professional Conduct as adopted and amended from time to time by the Supreme Court of Nevada, except as such may be modified by this Court. Any attorney who violates these standards of conduct may be disbarred, suspended from practice before this Court for a definitive time, reprimanded or subjected to such other discipline as the Court deems proper. This subsection does not restrict the Court's contempt power.

Nev. Dist. Ct. Local R. IA 10-7, made applicable by Nev. Bankr. Ct. Local R. 1001.

The Nevada Rules of Professional Conduct are based on, and

generally identical to, the ABA Model Rules of Prof'l Conduct ("ABA Model Rule[s]"). Courts may consult the ABA Model Rules and the official comments "for guidance to construe the Nevada Rules of Professional Conduct." Nev. Sup. Ct. R. 150; Edwards v. 360 Communs., 189 F.R.D. 433, 434-45 (D. Nev. 1999).

The bankruptcy court sanctioned DeLuca under its inherent powers because it determined that DeLuca violated Nev. R. 1.1. Under that rule, which is identical to the corresponding ABA Model Rule, "[a] lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." Nev. R. 1.1.

The bankruptcy court also sanctioned DeLuca under § 707(b)(4)(C). This Code provision, added by BAPCPA in 2005, provides that: "The signature of an attorney on a [Chapter 7] petition . . . shall constitute a certification that the attorney has . . . performed a reasonable investigation into the circumstances that gave rise to the petition." In applying this provision, the bankruptcy court acknowledged this Panel's decision holding that, "[t]he "reasonable investigation" under this section is indistinct from the "reasonable inquiry" under Rule 9011, and Rule 9011 case law is applicable. In re Kayne, 453 B.R. at 381.

In reviewing attorney disciplinary sanctions, we determine whether (1) the disciplinary proceeding was fair, (2) the evidence supports the findings, and (3) the penalty imposed was reasonable. In re Nguyen, 447 B.R. at 276. As discussed in the preceding section, we find that the proceeding was fair and did

-22-

not violate DeLuca's due process rights.  We examine the second and third In re Nguyen factors below.

**A.  The evidence supported the sanctions.**  The bankruptcy court's Sanction Opinion sets forth a discussion of the case law regarding the meaning and effect of Nev. R. 1.1. and § 707(b)(4)(C), and then explains their application to the facts of this case.  The bankruptcy court's analysis is sound.

Under Nev. R. 1.1, the central factual inquiry is whether a lawyer provides competent representation to the client.  Cudzey v. State, 747 P.2d. 233, 236 (Nev. 1987).  There is no precise definition of "competence" under either Nevada or federal law, but relevant factors include the lawyer's training, experience and preparation.  ABA Model R. 1.1 cmt. 5 ("Competent handling of a legal matter includes inquiry into and analysis of the factual and legal elements of the problem, and use of methods and procedures meeting the standards of competent practitioners."); Cudzey, 747 P.2d. at 236.

A debtor is duty-bound to file accurate lists of creditors and schedules of assets and liabilities.  § 521(a)(1)(A), (B); Rule 1007(b)(1)(A).  The bankruptcy schedules play a critical role in providing the information necessary for the commencement and administration of a bankruptcy case.  In particular, Schedule F lists all of the debtor's nonpriority unsecured creditors, and those names are then generally included in the list of creditors submitted by the debtor to the clerk so that those creditors can be notified about the commencement of, and other important information about, the debtor's bankruptcy case. Understandably, then, in satisfying the debtor's duties, a

-23-

debtor's attorney "bears a significant degree of responsibility in assuring to the best of his or her ability that the schedules are complete and accurate before they are filed." U.S. Tr. v. Lynn (In re Bellows-Fairchild), 322 B.R. 675, 680 (Bankr. D. Ore. 2005). As one leading treatise on bankruptcy law succinctly notes:

> In the preparation of the schedules nothing should be taken for granted. The attorney should carefully investigate the affairs of the debtor and make certain that the attorney has all the information needed to prepare full and complete schedules, for it is the duty of the debtor to present intelligible and true schedules.

4 COLLIER ON BANKRUPTCY ¶521.03[3] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2014).

The bankruptcy court determined that the Retainer Agreement between Cuomo and DeLuca "went too far" in transferring all responsibility for the accuracy of information to Cuomo. An attorney cannot by contract limit the scope of his duties. In re McKain, 325 B.R. 843, 849 (Bankr. D. Neb. 2005) ("a debtor's attorney bears a significant degree of responsibility in assuring to the best of his or her ability that the schedules are complete and accurate before they are filed."); see also Restatement (Second) of Contracts § 193 (1981).

DeLuca does not challenge the bankruptcy court's fact finding that he knew of the Second Case filed by Cuomo in 2009. Nor can he. DeLuca's Client Interview Sheet, signed by Cuomo, indicates that Cuomo informed his staff she had a previous bankruptcy that had been dismissed. Further, DeLuca does not take issue with the bankruptcy court's finding that he reviewed the Second Case. Indeed, DeLuca admits he examined the earlier

filing, but only to determine if Cuomo was eligible to file yet another bankruptcy petition, and that it was not his practice to review the schedules of prior bankruptcies. Hr'g Tr. 4:22-25, April 2, 2013.

The bankruptcy court determined that DeLuca had the duty to review the Second Case with Cuomo, and that had he diligently done so, he would have discovered the existence of the Ritchie Debt. As the court noted, even if Cuomo had not given him a petition and schedules from the earlier bankruptcy, they were readily available through the court's PACER system of electronic records. Sanction Opinion at 18. As the bankruptcy court summarized, "DeLuca's arguments are to no avail. The marginal expense of cross-checking prior schedules is far outweighed by the duty to provide competent representation by throughly investigating the facts." Sanction Opinion at 20.

Likewise, the bankruptcy court could properly disregard DeLuca's argument that he could not rely on schedules prepared in the earlier bankruptcy cases because the attorneys in those cases had been sanctioned for incompetence. First, the bankruptcy court observed that DeLuca's position was inherently contradictory. DeLuca stated that he never reviewed prior bankruptcy schedules, so it would not matter who prepared them. Secondly, at the time DeLuca filed the Third Case, he was not aware of the misfeasance of Cuomo's previous attorneys. Sanctions Opinion at 21.

We agree with the bankruptcy court that DeLuca violated Nev. R. 1.1 by his failure to competently investigate and take reasonable steps to assure that all of his client's creditors

-25-

were listed on the Original Schedule F.

The bankruptcy court also determined that DeLuca violated § 707(b)(4)(C), observing that other courts interpreting that Code provision have rejected an attorney's attempt to "blame the client" for mistakes. For example, in Withrow v. Collins (In re Withrow), 405 B.R. 505, 523 (1st Cir. BAP 2009), the panel rejected the attorney's argument that he failed to schedule closed bank accounts because of the debtor's poor health and faulty memory. See also In re Garrard, 2013 Bankr. LEXIS 3140, at * 17-18 (Bankr. N.D. Ala. August 5, 2013) ("The Debtors' attorney would exonerate himself from any responsibility by shifting the blame to his client who, according to the attorney, furnished the inaccurate information in the first place: 'ANY and ALL information contained in both petitions were [sic] provided by the debtors.' The Court is skeptical that [the debtor] was the exclusive source of the misinformation, but even if he were, that would not excuse the attorney's failure to inquire further.").

The bankruptcy court also found that Cuomo did everything that DeLuca asked her to do. She reviewed the draft petition and schedules in good faith and, unfortunately, failed to spot the omitted Ritchie Debt. But even so, it was DeLuca, not Cuomo, who was charged with the statutory duty under § 707(b)(4)(C)(1) to conduct a reasonable inquiry into Cuomo's financial affairs. Because DeLuca was aware that Cuomo had filed a prior bankruptcy case and schedules, he should have appreciated the need to review the prior filings and to compare the information therein to that he proposed to submit in Cuomo's Third Case for consistency and

completeness. That he did not do so contributed to the failure to list the Ritchie Debt in Cuomo's Third Case and to all of the consequences flowing from that omission.

**B. The sanction was reasonable.** This Panel consults the ABA Standards for Imposing Lawyer Sanctions (the "ABA Standards") for determining the reasonableness of sanctions. In re Nguyen, 447 B.R. at 277. The ABA Standards require consideration of four factors in determining the propriety of an attorney sanction: (1) the duties violated, whether owed to a client, the public, the legal system, or the profession; (2) the lawyer's mental state, whether he acted intentionally, knowingly, or negligently; (3) the seriousness of the actual or potential injury caused by the lawyer's misconduct; and (4) the existence of aggravating or mitigating circumstances. ABA Standards 9; In re Nguyen, 447 B.R. at 277.

The bankruptcy court addressed each of these four factors.

As to Factor 1, the duties violated, the bankruptcy court found that DeLuca harmed the public by practicing in a manner that erodes the public's trust in attorneys; that his conduct harmed the legal profession because his practice of deliberately ignoring his clients' prior bankruptcy schedules reflects poorly on the legal profession and engenders distrust and the perception that attorneys are inattentive to clients' particular circumstances; and that his conduct harmed the legal system by forcing the court to spend its limited resources on this sanctions matter. Sanction Opinion at 27-28.

As to Factor 2, the lawyer's mental state, the bankruptcy court found that DeLuca's conduct was "reckless, or at least

-27-

undertaken with conscious indifference." It also found that DeLuca only reviews prior petitions to determine if a client is eligible to file for bankruptcy and therefore knows or should know that he is turning a blind eye to potentially relevant information in prior schedules. Sanction Opinion at 28-29.

As to Factor 3, the seriousness of the injury DeLuca caused, the bankruptcy court observed that Cuomo was now embroiled in an adversary proceeding that very well could have been avoided; although the adversary proceeding may have occurred in any event, DeLuca's actions increased the probability that it would occur. Sanction Opinion at 30-31.

As to Factor 4, aggravating or mitigating circumstances, the bankruptcy court determined that DeLuca justified his ignoring the information in prior schedules by citing the cost to his practice. In the court's words, such a "regularized practice can only be characterized as selfish and a violation of the fiduciary duty to place clients' needs first." Sanction Opinion at 32. The court found that DeLuca refused to admit his mistakes; he blamed Cuomo for not being sufficiently forthcoming; and, finally, as an experienced consumer bankruptcy practitioner, he should understand that information in prior schedules is always relevant to properly understand a clients' circumstances and may have relevance for the relief available to a client and the risks that a client may face by taking or failing to take certain actions. Sanction Opinion at 31-32.

On this record, having considered the appropriate factors, the bankruptcy court could have imposed more drastic sanctions on DeLuca. His lack of a reasonable inquiry into Cuomo's financial

-28-

affairs arguably caused an injury or prejudice not only to his client, but to the public (which relies upon the accuracy of bankruptcy filings), and to the legal system (which is burdened by the additional legal procedures stemming from the omission of the Ritchie Debt). ABA Standards 24. Instead, the bankruptcy court opted for an extremely modest monetary sanction: requiring DeLuca to disgorge $851 of his $1,499 fee. The bankruptcy court has "wide discretion in determining the amount of a sanctions award." In re Kayne, 453 B.R. at 386. Given the nature and seriousness of DeLuca's transgressions, the bankruptcy court's sanction of $851 is reasonable.

## CONCLUSION

Because the disciplinary proceeding was fair, the evidence supports the findings made, and the penalty imposed was reasonable, we conclude that the bankruptcy court did not abuse its discretion in sanctioning DeLuca $851. We AFFIRM the bankruptcy court's order imposing the disgorgement sanction.