
**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>MEGAN CHRISTINE FIEDLER,<br>　　　　　Debtor. | BAP No. EC-23-1185-CLB |
| | Bk. No. 23-20862-CK |
| KAREL ROCHA; PRENOVOST<br>NORMANDIN DAWE & ROCHA,<br>　　　　　Appellants,<br>v.<br>MEGAN CHRISTINE FIEDLER; THE<br>GOLDEN 1 CREDIT UNION,<br>　　　　　Appellees. | Adv. No. 23-02038<br><br>**MEMORANDUM**\* |

Appeal from the United States Bankruptcy Court
for the Eastern District of California
Christopher M. Klein, Bankruptcy Judge, Presiding

Before: CORBIT, LAFFERTY, and BRAND, Bankruptcy Judges.

## INTRODUCTION

Chapter 7[1] debtor, Megan Christine Fiedler ("Fiedler") obtained a

---

\* This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

loan from creditor, Golden 1 Credit Union ("Golden 1"). When Fiedler failed to repay the loan and filed for bankruptcy, Golden 1 filed an adversary complaint to except the debt from discharge pursuant to § 523(a)(2) (false pretenses, a false representation, or actual fraud). During the adversary proceeding Golden 1 was represented by Karel Rocha ("Rocha") of the law firm Prenovost Normandin Dawe & Rocha ("Firm") (together, "Appellants").

After issuing an order to show cause, the bankruptcy court determined that Appellants violated Rule 9011 by filing a frivolous complaint. Rather than imposing monetary sanctions for the violation, the bankruptcy court imposed the sanction of a prefiling review before Appellants could file any complaint alleging nondischargeability of a debt in the U.S. Bankruptcy Court for the Eastern District of California. The sanction terminates on June 30, 2025. Appellants appeal the bankruptcy court's decision that Rule 9011 was violated and the bankruptcy court's choice of sanction.

Because the bankruptcy court did not abuse its discretion, we AFFIRM.

**FACTS**

Fiedler needed to "pay down the balance on her Wells Fargo credit card that carried a 24.3% interest rate." Because Fiedler already had a

relationship with Golden 1[2], she went to Golden 1 for help. Golden 1 is a not-for-profit financial cooperative. Golden 1 advised Fiedler against consolidating her loans with another company or filing for bankruptcy and recommended a Golden 1 loan. Although Fiedler sought a loan in the amount of $12,400 to fully pay off her Wells Fargo credit card balance, the maximum Golden 1 would lend was $9,000. Based on Golden 1's advice, Fiedler applied for and obtained the consumer loan in the amount of $9,000 from Golden 1 on November 3, 2022 ("Loan").

After receiving the Loan proceeds, Fiedler used the proceeds for the stated purpose and made a payment on her Wells Fargo credit card in the amount of $10,500. However, despite the payment, Fiedler still had a balance on her Wells Fargo credit card, and the balance continued to accrue interest. Fiedler also continued incurring additional amounts on the credit card to prevent a default on her other loans/debts, including her preexisting Golden 1 car loan.

Because the Loan did not "improve Fiedler's financial position," Fiedler eventually decided "bankruptcy was her best option." On March 21, 2023, Fiedler filed a chapter 7 bankruptcy petition. At the time of filing the bankruptcy petition, Fiedler had not made any payments on the Loan.

On April 23, 2023, Golden 1 filed an adversary complaint ("Complaint") seeking to have the Loan debt excluded from Fiedler's

---

[2] Fiedler had a car loan with Golden 1, although no specifics regarding the car loan were provided in the record.

discharge pursuant to § 523(a)(2)(A) (false pretenses, a false representation, or actual fraud). The Complaint contained few facts. Indeed, in the Complaint, Golden 1 merely alleged that Fiedler obtained the Loan "with no intent to ever repay," causing Golden 1 harm, and therefore, the debt should be nondischargeable due to fraud.

Fiedler, acting pro se in the adversary action, responded with a "statement of undisputed facts in support of her motion for bankruptcy" which the bankruptcy court later treated as an answer. In her answer, Fiedler maintained that Golden 1's advice was "poor" and that the "$9,000 loan did not benefit [her] financial situation in the slightest." Fiedler admitted that she had not made any payments on the Loan, but she maintained that when she took out the Loan she had "every intention of paying Golden 1 back." Fiedler asserted that she did not decide to file for bankruptcy until she realized she would "never be able to get out from under" her debt without the fresh start that bankruptcy provides.

At a status conference on the Complaint, the bankruptcy court expressed its concern as to the legal and factual basis of the Complaint. The bankruptcy court noted that there were only two factual allegations in the Complaint: (1) Fiedler received loan proceeds of $9,000 which she agreed to pay back with interest; and (2) Fiedler "never made a single payment." The bankruptcy court asked Golden 1 whether those facts were "sufficient to warrant a finding of – [an] act of fraud" and whether Golden 1 had any other reason to suspect fraud other than Fiedler "took out a loan, she didn't

4

pay, therefore, fraud. That's the analysis?" Counsel's response that "not making a single payment was another factor" was not deemed to be satisfactory, and the bankruptcy court continued probing, asking if there was "any evidence" of Fiedler's intent not to repay "at the time of getting the loan?" Golden 1 admitted there was not. Fiedler testified, similar to her answer, that at the time of applying for and receiving the Loan, she intended to repay the Loan in full with interest. Counsel for Golden 1 was unable to provide any evidence to the contrary.

The bankruptcy court admonished Golden 1, explaining that by "filing the [C]omplaint, Golden 1 certified that the claims, defenses and other legal contentions were warranted by existing law or non-frivolous argument for extension of law and the allegations . . . have factual support." However, based on the information provided, the bankruptcy court "doubt[ed] that Golden 1's inquiry was reasonable under the circumstances." The bankruptcy court informed the parties that it was tempted to "dismiss th[e] adversary proceeding for just the complete inadequacy of the theory." However, the bankruptcy court decided a better solution was to have a very short, prompt trial. Accordingly, the bankruptcy court set a short trial for three weeks out. The bankruptcy court determined that discovery was unnecessary as it would simply be a "fishing expedition."

A few days later, Golden 1 filed a "request for voluntary dismissal of adversary proceeding," which the bankruptcy court granted. In the order

dismissing the adversary proceeding, the bankruptcy court specifically retained jurisdiction over issues arising under Rule 9011 and § 523(d). Although the matter was dismissed, the bankruptcy court subsequently issued an order to show cause ("OSC") to Golden 1, Rocha, and the Firm, why each did not violate Rule 9011(b) by filing the Complaint and why sanctions should not be imposed.

In the OSC, the bankruptcy court presented three broad concerns: (1) the Complaint was not well-founded; (2) the respondents did not conduct a pre-filing "inquiry reasonable under the circumstances"; and (3) the Complaint appeared to be "filed for the improper purpose of implementing a strategy of suing impecunious consumers on small claims on little or no pretext so as to extract payments by way of default judgment or 'settlement' in lieu of trial because of the high transaction costs of defending litigation."

The OSC further suggested that the Complaint was frivolous because although the Complaint was an action for nondischargeability based on Fiedler's alleged fraud, the Complaint only identified two material facts. The Complaint contained no facts to support an allegation that Fiedler did not intend to repay the Loan when she acquired the Loan, a required element of a fraud cause of action. The OSC challenged Appellants to explain why the failure to include a sufficient factual basis did not demonstrate that (1) the inquiry was not reasonable under the circumstances and (2) the filing of the Complaint was for the "improper

6

purpose [of] trying to bludgeon payment in 'settlement' on a flimsy cause of action so lacking in merit that it could not support a default judgment."

The OSC also challenged the inclusion of paragraph 14 of the Complaint, which alleged that the Loan proceeds were "not consumer debts as defined in 11 U.S.C. § 101(8) to the extent that they were based upon fraud and willful, malicious, and tortious injury to [Golden 1]." The bankruptcy court reasoned the paragraph was frivolous and for an improper purpose because "paragraph 14 appears to serve only the purpose of attempting to elude [Golden 1's] potential liability for fees and costs under 11 U.S.C. § 523(d) that follow from a § 523(a)(2) fraud complaint on a 'consumer debt' that winds up being discharged."

The OSC concluded with a section described as "Considerations for Rule 9011 Sanctions." In this section, the bankruptcy court noted it had authority to issue monetary or nonmonetary sanctions in addition to attorneys' fees.

Golden 1 responded and objected to the bankruptcy court's characterization of the Complaint as frivolous and filed for an improper purpose. Golden 1 argued that fraud was a serious problem for lenders and that there is a correlation between "first payment" or "early payment" defaults and fraud. Golden 1 maintained that because Fiedler made no payments, it was reasonable for Golden 1 to conclude that Fiedler obtained the Loan through fraud.

Golden 1 also argued that the discrepancies between the information Fiedler included in her loan application and the information she included in her bankruptcy schedules were also indicia of fraud. Golden 1 noted that on her loan application, Fiedler claimed to have a monthly income of $3,172.00, whereas her Schedule I listed her monthly income as $2,773.90. Golden 1 also argued that it would have obtained additional evidence of Fiedler's fraud had discovery been allowed.

Nevertheless, Golden 1 informed the court that "as a result of the Court's concerns . . . Golden 1 has suspended the filing of new adversary filings pending an independent legal review of its pending adversary complaints and, if warranted by the outcome of that review, Golden 1 may make adjustments to its policies, procedures, and/or litigation practices."

During the OSC hearing, the bankruptcy court indicated that it continued to find the following issues: (1) *the insufficient basis of the Complaint and the unreasonable inquiry* – the bankruptcy court stated several times that the Complaint lacked a sufficient factual and legal basis, and the bankruptcy court maintained that the inquiry was unreasonable under the circumstances because neither Rocha nor anyone from the Firm sought an explanation from Fiedler about her intent prior to filing the Complaint; (2) *the purpose of the Complaint* – the bankruptcy court wondered why the Complaint was filed, given that the amount at issue was relatively small ($9,000) and that Golden 1 would likely not recover anything even if it prevailed on the Complaint due to the costs of litigation; (3) *the timing of the*

*Complaint* – the bankruptcy court noted that Golden 1 could have waited to file the Complaint until further investigation was completed, given the Complaint was filed almost two months before the deadline to file a nondischargeability action; and (4) *the legally baseless allegations in paragraph 14* – the bankruptcy court again specifically questioned the purpose of including paragraph 14 given that the allegation had no basis in law or fact.

Rocha's attempts to explain the filing of the Complaint and to assuage the bankruptcy court's concerns were unsuccessful. Rocha first focused on Fiedler's immediate default and attempted to convince the bankruptcy court that this fact was sufficient to plead an action for nondischargeability based on fraud. The bankruptcy court responded, "we can agree that that's an indicator of possible fraud that invites an inquiry reasonable under the circumstances." However, when questioned, Rocha admitted there was no additional inquiry before filing the Complaint.

The bankruptcy court again expressed its disapproval and its initial determination that no further inquiry before filing the Complaint was unreasonable under the circumstances. When Rocha indicated that he originally intended to supplement the Complaint with additional information obtained through deposition testimony, the bankruptcy court challenged Rocha to justify expensive depositions when no one from Golden 1 or the Firm had taken advantage of the opportunity to ask Fiedler questions under oath at the meeting of creditors. The bankruptcy court stated, "you know, the meeting of creditors is an opportunity to ask her an

explanation . . . [a]nd that was . . . effectively free. You don't have to take a deposition to do that." Additionally, when the bankruptcy court challenged Rocha to present a "theory of the litigation of this case that would have produced one dollar for Golden 1," Rocha was unable to provide a cogent answer.

The bankruptcy court was also critical of Golden 1's alleged surprise that Fiedler filed for bankruptcy. The bankruptcy court reasoned that bankruptcy was a logical and not unexpected choice for Fiedler given the Loan did not accomplish its intended purpose. The bankruptcy court noted that Fiedler sought a $12,000 loan but only received $9,000:

> She wanted 12 so she could get rid of her credit card, . . . if you fast-forward beyond the complaint and you read her explanation, you see that she realized that it [the Loan] hadn't helped . . . And then she . . . realize[d] that she was headed for bankruptcy. I think anybody looking at this loan file would have realized that she was headed to bankruptcy in the first place. That would -- see no way out, particularly if she's not getting taken out completely with respect to the -- the Wells Fargo loan. And it -- the Golden 1 was definitely more attractive because the interest rate was, you know, what, 11 percent instead of Wells Fargo 24 percent. I mean, certainly would have been in her benefit to get that. But . . . only if she got the full amount. I mean, I think any -- anybody who understands the possibility of bankruptcy would see that she was a walking case. I mean, she was, you know, what a bankruptcy lawyer would call inventory. And I'd say it would be inevitable. So that's where it sits.

OSC Hr'g Tr. 35:16-25; 36:1-13, Aug. 22, 2023.

10

Finally, the bankruptcy court challenged the basis of paragraph 14 of the Complaint:

COURT: The term "consumer debt" means debt incurred by an individual primarily for a personal family or household purpose.

MR. ROCHA: Correct. So all we meant with this paragraph, your Honor, is that to the extent that we allege and prove that this was a fraudulent debt, that we're not considering it to be a consumer debt.

THE COURT: Well, does the Congress consider it to be a consumer debt?

MR. ROCHA: It's in the statute.

. . . .

THE COURT: So do you have any case -- what is your authority for that assertion?

MR. ROCHA: We don't have a case for that, your Honor.

OSC Hr'g Tr. pgs. 30-32.

Throughout the OSC hearing, rather than clearly articulating a legal and factual basis for the Complaint, Rocha acknowledged there was minimal to no investigation conducted prior to filing the Complaint and that Appellants could have, and should have, done more. Regardless, Rocha maintained that the filing of the Complaint, even if not sufficiently supported, was not indicative of egregious conduct or similar to conduct that normally would be sanctionable under the standards for contempt.

The bankruptcy court was not convinced. The court entered a detailed opinion finding that Rocha and the Firm violated Rule 9011 by filing the Complaint ("Sanction Order"). The bankruptcy court did not impose any monetary sanctions. Rather, the court imposed the sanction of a "prefiling review by the undersigned judge of every complaint alleging nondischargeable debt before it is filed in the U.S. Bankruptcy Court for the Eastern District of California by Karel Rocha or the law firm of Prenovost, Normandin, Dawe & Rocha between now and June 30, 2025."

Rocha and the Firm filed a timely appeal from the Sanction Order.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(E). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

Whether the bankruptcy court abused its discretion in imposing sanctions against Rocha and the Firm under Rule 9011.

Whether the bankruptcy court's choice of sanctions was an abuse of discretion.

## STANDARDS OF REVIEW

We review the bankruptcy court's award of sanctions for an abuse of discretion. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990); *Orton v. Hoffman (In re Kayne)*, 453 B.R. 372, 380 (9th Cir. BAP 2011). The bankruptcy court's choices of sanctions are also reviewed for abuse of discretion. *U.S. Dist. Ct. for E.Dist. Wash. v. Sandlin*, 12 F.3d 861, 865 (9th Cir. 1993). Under

12

the abuse of discretion standard, we affirm unless the court below "applied the wrong legal standard or its findings were" clearly erroneous. *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 832 (9th Cir. 2011) (citing *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc)). With respect to sanctions, a bankruptcy court's factual findings are reviewed for clear error and given great deference. *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 649 (9th Cir. 1997). A factual finding is clearly erroneous if it is illogical, implausible, or without support in the record. *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1196 (9th Cir. 2010). We may affirm on any ground supported by the record, regardless of whether the bankruptcy court relied upon, rejected, or even considered that ground. *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014).

## DISCUSSION

### A.    Requirements of Rule 9011

The bankruptcy court determined that sanctions were appropriate under Rule 9011. Rule 9011 regulates the practice of attorneys that appear before the bankruptcy court. According to the Ninth Circuit, the "Rule discourages wasteful, costly litigation battles by mandating the imposition of sanctions when a lawyer's position, after reasonable inquiry, will not support a reasonable belief that there is a sound basis in law or in fact for the position taken." *Golden Eagle Distrib. Corp. v. Burroughs Corp.*, 801 F.2d

13

1531, 1538 (9th Cir. 1986).[3] Accordingly, by presenting a petition (or pleading, written motion, or other paper) to the court, the signing attorney is certifying, to the best of the attorney's "knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," that the petition "is not being presented for any improper purpose;" the claims, defenses, and other legal contentions "are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;" and the factual allegations have or are likely to have evidentiary support. Rule 9011(b).

"Where, as here, the complaint is the primary focus of [Civil] Rule 11 proceedings, a . . . court must conduct a two-prong inquiry to determine (1) whether the complaint is legally or factually 'baseless' from an objective perspective, and (2) if the attorney has conducted 'a reasonable and competent inquiry' before signing and filing it." *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002) (citing *Buster v. Greisen*, 104 F.3d 1186, 1190 (9th Cir. 1997)).

If the court determines that a Rule 9011 violation has occurred, the court may impose sanctions "limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly

---

[3] Rule 9011 is the counterpart to Civil Rule 11. Case law interpreting Civil Rule 11 is applicable to Rule 9011. *Shalaby v. Mansdorf* (*In re Nakhuda*), 544 B.R. 886, 899 (9th Cir. BAP 2016), *aff'd*, 703 F. App'x 621 (9th Cir. 2017) (citing *Marsch v. Marsch* (*In re Marsch*), 36 F.3d 825, 829 (9th Cir. 1994)).

14

situated." Rule 9011(c)(2); *DeVille v. Cardinale (In re DeVille)*, 361 F.3d 539, 553 (9th Cir. 2004); *Fjeldsted v. Lien* (*In re Fjeldsted)*, 293 B.R. 12, 28 (9th Cir. BAP 2003);.

## B.    Application of Rule 9011

On appeal, Appellants argue that the bankruptcy court abused its discretion in imposing sanctions because the bankruptcy court "failed to clearly state that the entire filing or any specific part thereof was both frivolous and made for improper purpose." Appellants also argue that if the bankruptcy court had considered the "actual totality of the circumstances," the bankruptcy court could not have found that their actions were sufficiently egregious to satisfy the heightened standard required when the bankruptcy court, rather than a party, initiates Rule 9011 proceedings. We disagree. First, the record demonstrates that the bankruptcy court found the entire Complaint frivolous, not just paragraph 14. Second, the record demonstrates that the bankruptcy court determined that Appellants' conduct was particularly egregious, not merely negligent, thus satisfying the heightened standard.

### 1.    The bankruptcy court did not abuse its discretion in determining the Complaint was frivolous.

Although Rule 9011 does not explicitly contain the word "frivolous," the Ninth Circuit has used that term as shorthand to "denote a filing that is both baseless and made without a reasonable and competent inquiry." *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1990).

15

Thus, a finding that there was no reasonable inquiry into either the facts or the law is tantamount to a finding of frivolousness. *Id.* A bankruptcy filing is made for an improper purpose if it is filed "to harass or to cause unnecessary delay or needless increase in the cost of litigation." Rule 9011(b)(1); *Dressler v. The Seeley Co. (In re Silberkraus)*, 336 F.3d 864, 870 (9th Cir. 2003). "In determining whether sanctions are warranted under Rule 9011(b), . . . [a court] must consider both frivolousness **and** improper purpose on a sliding scale, where the more compelling the showing as to one element, the less decisive need be the showing as to the other." *In re Silberkraus*, 336 F.3d at 870 (emphasis in original) (internal quotation marks and citation omitted).

Here, although the bankruptcy court specifically found that paragraph 14 was frivolous, the record demonstrates that the bankruptcy court also determined the entire Complaint was frivolous. Beyond their conclusory allegations, Appellants have not demonstrated otherwise.

As to paragraph 14, the bankruptcy court found that it was a legally frivolous claim contrary to the requirements of Rule 9011, and Appellants have failed to provide evidence demonstrating the bankruptcy court's finding was clearly erroneous. Indeed, at the OSC hearing, Rocha admitted there was no case law supporting the assertion of paragraph 14. In the Sanction Order, the bankruptcy court correctly determined that as a "matter of law, fraudulent intent does not disqualify a debt from 'consumer debt' status." Because there was no justifiable legal basis for the

inclusion of paragraph 14, the bankruptcy court did not clearly err in determining that the allegation was added to the Complaint for two possibly improper purposes: (1) to intimidate as part of an effort to extract an unjust settlement; and/or (2) a "transparent effort to evade § 523(d) liability for a creditor who sues unsuccessfully to establish a consumer debt was obtained by nondischargeable § 523(a)(2) fraud."

Beyond paragraph 14, the bankruptcy court determined the Complaint as a whole was frivolous and filed for an improper purpose. Specifically, the bankruptcy court determined that the Complaint did not have a sufficient factual or legal basis, and therefore, Rocha's inquiry was not reasonable under the circumstances.

In the OSC, at the OSC hearing, and again in the Sanction Order, the bankruptcy court focused on the scarcity of facts pled in the Complaint. The bankruptcy court found that the Complaint contained only two operative facts: (1) Fiedler received the Loan from Golden 1; and (2) Fiedler made no payments on the Loan. The bankruptcy court agreed that the existence of a fraud indicator, such as early payment default, may trigger an inquiry by a creditor. However, the bankruptcy court determined that the mere circumstance of non-payment was "too weak a reed on which to build a case" where Appellants were required to plead the elements of fraud with particularity[4] and prove all elements of fraud by a

---

[4] When pleading fraud, the plaintiff must state the circumstances constituting the fraud with greater particularity, including "the who, what, when, where, and how of

17

preponderance of the evidence.[5]

The bankruptcy court also found that, beyond a conclusory statement that Fiedler had no intent to ever repay, the Complaint lacked any facts as to Fiedler's "intent at the inception of the [L]oan," a necessary element in pleading fraud.[6] Although the bankruptcy court agreed that fraud was a valid concern for lenders and that Fiedler's early default meant "there was explaining for the debtor to do," the bankruptcy court found that there were no attempts by Golden 1 or Golden 1's attorney to obtain an explanation before filing the Complaint. The bankruptcy court stated that "neither Golden 1, nor Rocha, attended the meeting of creditors, thereby missing an early opportunity to inquire of the debtor under oath why there was a first payment default." Additionally, "[t]here was no request for reaffirmation. There was no Rule 2004 examination. There was no inquiry

---

the misconduct charged." *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010) (quoting *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)). Civil Rules 8 and 9 apply to bankruptcy court adversary proceedings through Rules 7008 and 7009.

[5] A creditor must establish five elements by a preponderance of the evidence to prevail on a § 523(a)(2)(A) claim: (1) misrepresentation, fraudulent omission or deceptive conduct by the debtor; (2) knowledge of the falsity or deceptiveness of the statement or conduct; (3) an intent to deceive; (4) justifiable reliance by the creditor on the debtor's statement or conduct; and (5) damage to the creditor proximately caused by its reliance on the debtor's statement or conduct. *Turtle Rock Meadows Homeowners Ass'n v. Slyman (In re Slyman)*, 234 F.3d 1081, 1085 (9th Cir. 2000).

[6] *See Reingold v. Shaffer (In re Reingold)*, BAP Nos. CC-12-1112-PaDKi, CC-12-1141-PaDKi, 2013 WL 1136546, at *5 (9th Cir. BAP Mar. 19, 2013) (A § 523(a)(2)(A) claim requires that the "the critical misrepresentation must occur at or before the point where the money was obtained.") (internal quotation marks and citation omitted).

directed to debtor's counsel before filing the Complaint." Given such failures, the bankruptcy court determined that the Complaint was filed without a reasonable and competent inquiry under the circumstances.

In addition to finding the Complaint was frivolous as filed, the bankruptcy court further considered and rejected Appellants' argument that there was additional, unpled evidence of fraud which would support a reasonable belief that there was a sound basis in law or in fact for filing the Complaint.

First, the bankruptcy court considered and rejected Rocha's assertion that Fiedler filing for bankruptcy despite only having a small difference between her monthly income and expenses was additional indicia of fraud. In the Sanction Order, the bankruptcy court stated, "[c]iting no authority, Rocha opines that it was 'abnormal for a person to file a bankruptcy petition when they have less than $20.00 per month more in expenses than their monthly income."

The bankruptcy court rejected Rocha's assertion because: (1) Rocha's "focus on income and expenses ignores accumulated debt to be discharged"; (2) Rocha "assumes a stable monthly balance sheet that ignores the . . . vagaries of a single-parent's life living on a razor-thin budget with little or no contingency"; and (3) improving a debtor's balance sheet is a core value of the bankruptcy process, and it is "neither abnormal nor indicative of fraud for a debtor whose regular monthly income and expenses leave little or no surplus to seek bankruptcy relief to eliminate

19

accumulated debt." Thus, the record demonstrates that the bankruptcy court found that Rocha's reasoning as to this alleged additional indicium of fraud was without legal and factual merit, and Appellants have not established this finding was clear error.

Second, the bankruptcy court considered and rejected Appellants' argument that Rocha's review of the loan file uncovered additional indicia of fraud even though such facts were not pled in the Complaint. At the OSC hearing, Rocha indicated that before he filed the Complaint, he reviewed Fiedler's loan file and her bankruptcy schedules. Rocha testified that the numbers did not match and that the discrepancies were additional indicia of fraud. The bankruptcy court found the argument unpersuasive because Appellants had not made a § 523(a)(2)(B) claim (fraud based on false financial statements). The bankruptcy court also found that the alleged differences in the amounts were not additional indicia of fraud because any discrepancies were minimal and not "material." According to the bankruptcy court,

> Although Rocha says that in comparing the loan file with the bankruptcy file he noted inconsistent statements as to the debtor's income, none of the putative inconsistencies appear to be material. Nor are they inconsistent with the debtor's employment earning $19.30 per hour under a collective bargaining agreement in which the total hours per week are variable and subject to the vagaries of life as a single parent of an elementary school age child.

Appellants have not established that the bankruptcy court's findings were

clearly erroneous.

Thus, the record reflects that contrary to Appellants' assertions, the evidence amply supports the bankruptcy court's determination that the Complaint was both factually and legally "baseless" and made without a "reasonable and competent inquiry." Accordingly, the bankruptcy court did not abuse its discretion in finding the Complaint to be "frivolous" and thus sanctionable under Rule 9011.

> 2.    **The bankruptcy court did not abuse its discretion in sanctioning Appellants.**

A bankruptcy court may award an appropriate sanction on its own initiative under Rule 9011 if it first issues an order to show cause describing the specific misconduct. Rule 9011(c)(1)(B). However, when a bankruptcy court initiates Rule 9011 proceedings on its own initiative, as it did here, the conduct must be "akin to contempt" which "requires more than ignorance or negligence on the part of [the attorney]." *In re Nakhuda*, 544 B.R. at 902 (citing *Barber v. Miller*, 146 F.3d 707, 711 (9th Cir. 1998)). The "akin to contempt" standard requires "egregious" conduct or a finding of "bad faith." *Id.* at 901 (synthesizing case law to deduce this rule). This standard is higher than the standard for party-initiated sanctions because "unlike party-initiated motions, court-initiated sanctions under Rule 9011(c)(1)(B) do not involve the 21-day safe harbor provision for the offending party to correct or withdraw the challenged submission." *Id.* at 899.

In this case, the bankruptcy court appears to have applied the incorrect legal standard because the Sanction Order indicates that the filing of the Complaint was evaluated under a reasonable attorney standard rather than the heightened "akin to contempt" standard. Nonetheless, we determine that remand is not necessary because the bankruptcy court's findings, combined with the record, sufficiently support the court's decision to sanction Appellants under Rule 9011. *See, e.g., McCandless v. U.S. Tr.* (*In re Carrera*), BAP No. NC-15-1383-KiTaJu, 2016 WL 4400652, at *6 (9th Cir. BAP Aug. 16, 2016), *aff'd sub nom. Vizconde v. Burchard* (*In re Vizconde*), 715 F. App'x 630 (9th Cir. 2017); *In re Nakhuda*, 544 B.R. at 901 n.10 (explaining appellant had not directed the Panel to "any clearly erroneous facts which would warrant disturbing the bankruptcy court's decision based on its application of the reasonableness standard").

Although the bankruptcy court did not specifically state that Appellants' conduct was egregious or in bad faith, the bankruptcy court's many admonishments throughout the proceedings demonstrate that the bankruptcy court found Appellants' conduct flagrant and intolerable and not merely negligent, thus satisfying the heightened "akin to contempt" standard.

For example, in its Sanction Order, the bankruptcy court stated, "Rocha, and Golden [1] by extension, did not 'stop and think' and make an investigation appropriate under the circumstances before filing the Complaint." Further, in its OSC, the bankruptcy court stated: (1) "Not only

22

is Plaintiff's sole reliance on the naked post-hoc-ergo-propter-hoc fallacy[7] insulting to a trained legal mind, it flunks the specificity pleading requirements of Rule 7009 and, even if accepted as true by a trier of fact, could not plausibly support entry of a default judgment for fraud"; (2) "The fact that only two concrete facts that could be mustered to support the Complaint were fallacious per se on a Complaint that Rule 7009 requires be pled with specificity suggests that Rule 9011 was violated by not making an 'inquiry reasonable under the circumstances' required by Rule 9011"; and, (3) "The fact that the only two concrete facts alleged cannot support a cause of action for nondischargeable fraud likewise supports an inference of improper purpose of trying to bludgeon payment in 'settlement' on a flimsy cause of action so lacking in merit that it could not support a default judgment."[8]

Furthermore, despite the bankruptcy court's articulation of the glaring deficiencies of the Complaint, Appellants insisted, and continue to insist, that they did not file a frivolous Complaint because their inquiry was reasonable under the circumstances. Appellants' continued assertions

---

[7] The bankruptcy court described this as "one of the most elementary logical fallacies in the books . . . (because this, then that: otherwise stated, George Washington married Martha Custis and, in due course, became Father of His Country)."

[8] At the OSC hearing, the bankruptcy court stated: (1) "If you're thinking that's a meritorious basis for filing, you're dreaming"; (2) "You didn't do anything to ascertain anything then . . . when you put your signature on the Complaint?"; and, (3) "[W]hen you put your signature on [the Complaint] . . . you're putting your license on the line . . . wouldn't a prudent lawyer just pay some attention . . .?"

of the same frivolity and unwavering insistence of their faultlessness in filing the Complaint also constitute egregious conduct.

Based on the record, the bankruptcy court did not abuse its discretion in sanctioning Appellants because the record demonstrates that the bankruptcy court did not find the violations merely technical or inadvertent. *See In re Est. of Taplin*, 641 B.R. 236, 254 (Bankr. E.D. Cal. 2022). Rather, the record demonstrates that the bankruptcy court impliedly found that by filing a Complaint wholly lacking in both a factual and legal basis, Appellants' conduct was tantamount to bad faith, thus satisfying the required heightened standard.

## C. The bankruptcy court's choice of sanctions was not an abuse of discretion.

Appellants argue that because they voluntarily dismissed the Complaint, the bankruptcy court should not have imposed any sanction harsher than an admonition.

Once a court determines that a Rule 9011 violation has occurred and that sanctions are warranted, the court must decide what sanctions are appropriate. Rule 9011(c). Sanctions are limited to "what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated." Rule 9011(c)(2). Given the various forms improper conduct may assume, a court imposing sanctions under Rule 9011 has "broad discretion in determining the type of sanctions to impose." *DeLuca v. Seare* (*In re Seare*), 515 B.R. 599, 621 (9th Cir. BAP 2014).

24

Here, the bankruptcy court had the authority to sanction Appellants even after the Complaint was voluntarily dismissed.[9] Indeed, as the Supreme Court stated, "[e]ven if the careless litigant quickly dismisses the action, the harm triggering [Civil] Rule 11's concerns has already occurred." *Cooter & Gell*, 496 U.S. at 398. Although Appellants are correct that courts sometimes find admonishment is a sufficient sanction to deter repetition of the violating conduct,[10] Appellants provide no legal support that the bankruptcy court was confined to imposing only an admonishment as a sanction.[11]

In this case, when determining what sanction was likely to deter the

---

[9] "It is well established that a federal court may consider collateral issues after an action is no longer pending. . . . [An] imposition of a [Civil] Rule 11 sanction is not a judgment on the merits of an action. Rather, it requires the determination of a collateral issue: whether the attorney has abused the judicial process, and, if so, what sanction would be appropriate." *Cooter & Gell*, 496 U.S. at 395–96.

[10] *See, e.g.*, *In re LeGrand*, 638 B.R. 151, 162 (Bankr. E.D. Cal. 2022) ("Considering the totality of circumstances and consequences (which might not have ended yet), the requisite function of deterring [defendant] and others similarly situated has been satisfied by the issuance of this opinion without the need to inflict an additional specific penalty by this court.").

[11] We acknowledge that a prefiling review is not a common Rule 9011 sanction (prefiling orders are more commonly imposed after a vexatious litigant order); however, we have found no prohibition of such a sanction and other courts have imposed similar sanctions. *See, e.g.*, *In re Ioane*, No. 99-CV-21119-SW, 2021 WL 2697139, at *1 (N.D. Cal. June 14, 2021), *aff'd sub nom. Ioane v. Cnty. of Santa Clara*, No. 21-16104, 2023 WL 370880 (9th Cir. Jan. 24, 2023) (describing sanction order of a prefiling review); *Todd v. Skrah*, No. 1:17-CV-00738-CL, 2017 WL 3429387, at *1 (D. Or. Aug. 8, 2017), *aff'd*, 728 F. App'x 745 (9th Cir. 2018) (describing a Civil Rule 11 sanction against plaintiff as a prefiling order requiring review of all filings related to a specific incident).

25

same conduct in the future, the bankruptcy court found that admonishment was insufficient because Appellants had demonstrated a pattern of filing frivolous complaints. In the Sanction Order the bankruptcy court identified similar complaints Appellants had filed in six other adversary proceedings. At the OSC hearing, Rocha testified that the Firm represented "multiple credit unions and creditors throughout California" and that one of his clients had "3,000 civil cases, [and] a lot of [the borrowers] filed bankruptcies." Based on the concern that Rocha and the Firm would continue to file frivolous adversary complaints, the bankruptcy court believed that a district-wide prefiling requirement of limited duration would sufficiently deter Appellants from filing such a frivolous complaint again. Specifically, the bankruptcy court determined that what was "reasonably necessary to deter repetition of the conduct . . . [was] to impose a requirement of prefiling review by the undersigned judge of every complaint alleging nondischargeable debt before it is filed in the U.S. Bankruptcy Court for the Eastern District of California by [Rocha or the Firm] . . . between now and June 30, 2025."

Although Appellants' counsel at oral argument asserted that the choice of sanctions was unfair because it prevented Appellants from representing their clients, Appellants did not argue this in their appellate brief or before the bankruptcy court and thus waived the argument. *See Archdiocese of Milwaukee Supporting Fund, Inc. v. Mercury Interactive Corp.* (*In re Mercury Interactive Corp. Sec. Litig.*), 618 F.3d 988, 992 (9th Cir. 2010) (An

26

issue is generally deemed waived on appeal if the argument was not raised sufficiently for the trial court to rule on it.); *Greenwood v. F.A.A.*, 28 F.3d 971, 977 (9th Cir. 1994) ("We review only issues which are argued specifically and distinctly in a party's opening brief."). Regardless, we find the argument without merit. Appellants have provided no reason why they cannot seek additional clarification from the bankruptcy court that would mitigate the timing issues of which they complain.

Based on the record, the bankruptcy court's choice of sanctions was not an abuse of its discretion.

## CONCLUSION

Based on the foregoing, we AFFIRM.